**C.J.A., by John A. Thelen, Guardian Ad Litem, Plaintiff,**

v.

**W.C., Defendant and Appellant**

**and**

**S.P.A.M., Defendant and Appellee.**

Civil No. 960063.

Supreme Court of North Dakota.

July 22, 1996.

R. Lee Hamilton, Grand Forks, for plaintiff and appellee.

Jay H. Fiedler of Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for defendant and appellee.

Henry H. Howe of Howe & Seaworth, Grand Forks, for defendant and appellant.

VANDE WALLE, Chief Justice:

W. C. [Walter][1] appealed from a judgment declaring him to be the natural father of C.J.A. [Carly] and ordering him to pay child support. We hold that Walter, the reputed father, may not use the five-year statute of limitations of N.D.C.C. § 14–17–05(1)(b) as a shield against his claimed parental obligations. We affirm.

P.E. [Pam] is Carly's natural mother. Pam and S.P.A.M. [Sam] were married in December 1982. They separated in 1984, and were divorced in February 1986 under a stipulation which stated that "no children have been nor will be born of said marriage." Carly was born on June 26, 1986. According to both Pam and Sam, they were separated and were not having sexual relations with each other when Carly was conceived. In 1985, Pam began a relationship with Walter, and according to Pam, he was the only person she was having sexual relations with when Carly was conceived.

On November 21, 1991, Pam commenced this paternity action against Walter, alleging that he was Carly's natural father and seeking child support. Appearing pro se, Walter denied he was Carly's father. The court ordered genetic tests to determine the probability that Walter was Carly's natural father. The results of the tests did not exclude Walter as Carly's natural father and established a 99.96% probability of his paternity. Pam then moved to join Carly as a party to the action and requested appointment of a guardian ad litem for her. Pam also moved for partial summary judgment on the issue of Walter's paternity. Walter retained counsel and moved to dismiss Pam's action, contending it was commenced more than five years after Carly was born and was therefore barred by N.D.C.C. § 14–17–05(1)(b).

The trial court denied Pam's motion for summary judgment on the issue of Walter's paternity, denied Walter's motion to dismiss on the statute of limitations, directed that Sam and Carly be named as parties to the action under N.D.C.C. § 14–17–08, and appointed a guardian ad litem for Carly. Pam then filed an amended complaint naming Carly and Sam as parties to the action and reasserting that Walter was Carly's natural father. Walter filed an amended answer and demanded a jury trial. The trial court struck Walter's demand for a jury trial, denied motions for summary judgment by Pam and Sam, and ordered Sam to undergo blood tests to determine the probability that he was Carly's natural father. The results of those tests excluded Sam as Carly's father. Walter then requested additional blood tests, and the results of those tests did not exclude Walter as Carly's father and established a 99.764% likelihood of his paternity. The trial court thereafter granted summary judgment on the paternity issue, holding that Walter was Carly's natural father. After an evidentiary hearing, the court ordered Walter to pay past and future child support for Carly. Walter appealed.

Walter asserts that Sam is presumed to be Carly's natural father under N.D.C.C. § 14–17–04(1)(a), because she was born within three hundred days after Pam and Sam were divorced. Walter contends that the trial court erred in declaring him to be Carly's natural father, because no action was brought to disestablish Sam's presumptive paternity within five years after Carly's birth under N.D.C.C. § 14–17–05(1)(b).

■ The Uniform Parentage Act, N.D.C.C. Ch. 14–17, [UPA] was designed to provide substantive legal equality for all children, regardless of the marital status of their parents, and to identify the person against whom the children's rights may be asserted. 9B Uniform Laws Annotated, UPA, Prefatory Note (1987). To identify the natural father of a child, the UPA sets up a network of rebuttable presumptions for cases in which proof of external circumstances indicate a particular man is the probable father of a child. UPA, Prefatory Note.

1. The names used in this opinion are pseudonyms.

Under N.D.C.C. § 14–17–04(1)(a) and (f),[2] a man is presumed to be the natural father of a child if the man was married to the child's natural mother and the child is born within three hundred days after the marriage is terminated by a divorce decree, or if genetic tests establish the man is not excluded as the natural father and the statistical probability of paternity is higher then 95%. A presumption of paternity under N.D.C.C. § 14–17–04 may be rebutted in an appropriate action by clear and convincing evidence, or by a court decree establishing paternity of the child by another man. N.D.C.C. § 14–17–04(2).

The UPA also describes who may bring an action to determine the existence or nonexistence of a father-child relationship and when the action must be brought. Section 14–17–05, N.D.C.C., provides:

"1. A child, his natural mother, or a man presumed to be his father under subdivision a, b, or c of subsection 1 of section 14–17–04, may bring an action:

"a. At any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision a, b, or c of subsection 1 of section 14–17–04; or

"b. For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision a, b, or c of subsection 1 of section 14–17–04 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.

"2. Any interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision d, e, or f of subsection 1 of section 14–17–04.

"3. An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 14–17–04 may be brought by the child, the mother or personal representative of the child, the authorities charged with the support of the child, the personal representative or a parent of the mother if the mother has died, a man alleged or alleging himself to be the father, or the personal representative or a parent of the alleged father if the alleged father has died or is a minor."

Under N.D.C.C. § 14–17–05, "[a]ttack on the presumptions based on marriage or on a relationship between the parents that resembles marriage is restricted to a limited circle of potential contestants and in point of time. Presumptions created in other circumstances may be attacked more freely." UPA § 6, Comment. A child, the natural mother, or presumed fathers by marriage may bring an action to declare the *existence* of a father-child relationship at any time under N.D.C.C. § 14–17–05(1)(a), while the same entities may bring an action to declare the *nonexistence* of a father-child relationship no later than five years after the child's birth under N.D.C.C. § 14–17–05(1)(b).

In *In Interest of K.B.*, 490 N.W.2d 715 (N.D.1992), we said that N.D.C.C. § 14–17–

**2.** Section 14–17–04, N.D.C.C., provides:
"1. A man is presumed to be the natural father of a child if:
"a. He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;

\*   \*   \*   \*   \*   \*

"f. If genetic tests show that he is not excluded and the statistical probability of his parentage is ninety-five percent or higher.

"2. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man."

05(1)(b) creates a statutory cause of action to declare the *nonexistence* of a father-child relationship presumed under N.D.C.C. § 14–17–04(1)(a). We also said the five-year statute of limitations for bringing an action to declare the nonexistence of the father-child relationship did not preclude the presumed father from claiming he was not the child's father as a defense in a child support collection action brought more than five years after the child's birth. In *K.B.*, we held that the reputed father could not use the five-year statute of limitations to shield against his alleged parental obligations and to preclude a man presumed to be a father under N.D.C.C. § 14–17–04(1)(a) from rebutting that presumption. See *People in Interest of L.J.*, 835 P.2d 1265 (Colo.Ct.App.1992); *People in Interest of R.T.L.*, 780 P.2d 508 (Colo.1989); *State of Georgia ex rel. Brooks v. Braswell*, 474 N.W.2d 346 (Minn.1991); *State ex rel. Ward v. Carlson*, 409 N.W.2d 490 (Minn. 1987).

■ This action by Pam, the natural mother, was postured as a proceeding to declare the existence of Walter's paternity and not to declare the nonexistence of the presumed father-child relationship between Sam and Carly. Although one of the effects of a decree establishing Walter's paternity is to disestablish paternity by Sam, N.D.C.C. § 14–17–04(2) [a presumption of paternity is rebutted by a court decree establishing paternity of the child by another man], Walter is not in the "limited circle of potential contestants" authorized by statute to attack the presumption of paternity based on marriage. Instead, the plain language of N.D.C.C. § 14–17–05(1)(b) is limited to actions by a child, the natural mother, or presumed fathers by marriage to declare the nonexistence of the father-child relationship. The intended beneficiaries of the time limitation for the statutory cause of action created by N.D.C.C. § 14–17–05(1)(b) are the child, the natural mother, and presumed fathers by marriage. See *K.B.* Cf. *State v. Sundquist*, 542 N.W.2d 90 (N.D.1996) [intended beneficiary of statute requiring notification of protection order is the individual who sought the

protection order and not the alleged violator of protection order]. Here, none of those beneficiaries, Carly, Sam, or Pam, have raised the statute of limitations as an affirmative defense. See *K.B.*

■ Under the UPA and *K.B.*, Walter may not use the five-year statute of limitations of N.D.C.C. § 14–17–05(1)(b) to shield against his claimed parental obligations and to preclude Sam from rebutting the presumption of his paternity in N.D.C.C. § 14–17–04(1)(a). We reject Walter's invitation to revisit or distinguish *K.B.*, and we reiterate our statement in *K.B.* that construing N.D.C.C. § 14–17–05(1)(b) to provide an affirmative defense to reputed fathers in Walter's position would be contrary to legislative intent and public policy.

Relying on *B.H. v. K.D.*, 506 N.W.2d 368 (N.D.1993), Walter nevertheless argues that the results of the genetic tests cannot be used to "bootstrap" this action under N.D.C.C. § 14–17–05(2). In *B.H.*, we held that, under the UPA, a man claiming to be the natural father of a child born during the mother's marriage to another man must have standing to commence a paternity action and could not "bootstrap" standing with subsequent genetic tests. We held that, in order to confer standing, the genetic tests must have been in existence when the action was commenced. In *B.H.*, the man bringing the paternity action did not have standing under our statutes.[3]

■ Here, Section 14–09–02, N.D.C.C., states that all children born within ten months after the dissolution of a marriage are presumed to be legitimate children of the marriage. Section 14–09–03, N.D.C.C., provides that that presumption of legitimacy can be disputed "only by the husband or wife, or the descendant of one or both of them." Thus, to the extent that one of the effects of Pam's action is to disestablish Sam's paternity, under those statutes, Pam has standing to dispute Carly's legitimacy in an action to determine Carly's natural father, and, during the course of the action, the court may order

---

**3.** But cf. *West Virginia ex rel. Allen v. Stone*, —— W.Va. ——, 474 S.E.2d 554 (1996) [biological father has state constitutional right to establish paternity where by clear and convincing evidence he has established a relationship with child].

genetic tests. N.D.C.C. § 14–17–10; *In Interest of M.Z.,* 472 N.W.2d 222 (N.D.1991) [statute requires court to order genetic tests only when the request for tests is made while proceedings are pending to adjudicate parentage under the UPA]. Standing is conferred in this case by our statutes and not by "bootstrapped" genetic tests.

We hold that under N.D.C.C. § 14–17–05(1)(b), Walter may not raise the five-year statute of limitations to shield his potential parental obligations and to preclude Sam from rebutting the presumption of his paternity in N.D.C.C. § 14–17–04(1)(a).

Walter argues that the district court erred in denying his demand for a jury trial under N.D.C.C. § 14–17–13(4), which authorizes a jury trial for paternity actions. He argues his demand was timely under N.D.R.Civ.P. 38, because it was made in an amended pleading which raised new issues.

In *Land Office Co. v. Clapp–Thomssen Co.,* 442 N.W.2d 401, 403–404 (N.D.1989), the majority of this court adopted federal precedent regarding the waiver of the right to a jury trial:

"Under Rule 38, F.R.Civ.P., a party automatically waives a jury trial on any issue triable of right by a jury unless an affirmative demand for a jury trial is made no later than ten days after service of the last pleading directed to that issue....

"Once a party waives the right to trial by jury on any issue under Rule 38(b) and (d), F.R.Civ.P., the right to trial by jury on that issue cannot be revived by amending or supplementing a pleading....

"If new issues are raised by amended or supplemental pleadings, a previously waived right to a jury trial is revived only to the new issues.... Amended or supplemental pleadings raising the same general issues as previous pleadings do not raise 'new issues' under Rule 38(b), F.R.Civ.P., even if the amended or supplemental pleadings differ from the earlier pleadings in some respects." [Citations omitted].

Pam's initial complaint alleged that Walter was Carly's natural father. Walter's pro se answer denied his paternity and did not demand a jury trial. After the court ordered her to do so, Pam filed an amended complaint which named both Carly and Sam as parties under N.D.C.C. § 14–17–08, and reasserted that Walter was Carly's natural father. Walter demanded a jury trial in his amended answer, which again denied his paternity and raised the legal issue of the statute of limitations. Although the amended pleadings added necessary parties to the action under N.D.C.C. § 14–17–08, those pleadings raised the same general factual issue as the previous pleadings—Walter's paternity. Walter's amended answer did not revive his right to a jury trial, which he waived by not making a timely demand in his pro se answer. See *Greenwood, Greenwood & Greenwood v. Klem,* 450 N.W.2d 745 (N.D.1990) [rules of procedure for demanding jury trial will not be modified or applied differently merely because a party not learned in the law is acting pro se]. The trial court did not abuse its discretion in striking Walter's untimely demand for a jury trial.

Moreover, after striking Walter's demand for a jury trial, the court granted summary judgment on the issue of paternity, ruling there were no disputed issues of material fact. Summary judgment is a procedure for promptly disposing of a lawsuit without a trial if, after viewing the evidence in the light most favorable to the party against whom it is sought and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or if only a question of law is involved. *Deigel v. City of West Fargo,* 546 N.W.2d 367 (N.D.1996). See N.D.R.Civ.P. 56. A party resisting a motion for summary judgment must present competent admissible evidence, by affidavit or otherwise, which raises a genuine issue of material fact. *Borsheim v. O & J Properties,* 481 N.W.2d 590 (N.D.1992). Summary judgment is proper when a party fails to raise a reasonable inference of the existence of an element essential to the party's claim and on which that party will bear the burden of proof at trial. *Matter of Estate of Stanton,* 472 N.W.2d 741 (N.D.1991). When deciding a motion for summary judgment, a court must consider the substantive

standard of proof. *Kary v. Prudential Ins. Co. of America*, 541 N.W.2d 703 (N.D.1996).

The district court ruled:

"[T]here is no dispute as to any factual issue since the blood test performed indicate that [Sam] cannot be the father and the probability that [Walter] is the father range from 99.764 to 99.96 percent. [Walter] is therefore a presumed father under Section 14–17–04(1)(f). Further, [Pam] has testified by Affidavit that [Walter] was the only individual she had sexual relations with during the period of conception and [Walter] has never denied sexual access."

■ When Walter asked for additional blood tests for the parties, he stipulated to the admissibility of the results of the additional tests without further objection. The court then ordered additional tests for Walter, Carly, and Pam "with the understanding that all previous blood tests performed shall be admitted into evidence, without any objection as to foundation." The results of the blood tests excluded Sam as Carly's father, but did not exclude Walter and established a 99.764 and 99.96% "probability of [Walter's] paternity ... as compared to an untested random man of the North American Caucasian population." Walter had the burden of rebutting the presumption of his paternity by clear and convincing evidence. N.D.C.C. § 14–17–04(2). Under these circumstances, we conclude Walter did not raise a genuine issue of material fact to rebut the presumption of his paternity. Instead, Walter's defense consisted of a legal issue involving the statute of limitations which does not entitle him to a jury trial. *General Elec. Credit Corp. v. Richman*, 338 N.W.2d 814 (N.D. 1983) [no right to jury trial where there is no dispute in facts and only question of law is involved]; *State v. Roberts*, 67 N.D. 92, 269 N.W. 913 (1936) [same]. Because no disputed factual issues exist, summary judgment on the issue of Walter's paternity was proper and he was not entitled to a jury trial on that issue.

Walter argues the trial court's findings of fact and conclusions of law, which were issued after an evidentiary hearing to decide Walter's child support obligation, were an attempt to "sandbag" and "stack the deck" in his appeal. However, Walter has raised no issue about the extent of his child support obligation, and we conclude that his argument that the findings of fact were an attempt to "sandbag" his appeal is meritless.

Pam and Sam both request attorney fees for this appeal under N.D.C.C. § 14–17–15, which, effective April 6, 1995,[4] provides:

"*Costs.* The court may order reasonable fees of experts and the child's guardian ad litem and other costs of the action and pretrial proceedings, including genetic tests, to be paid by the parties in proportions and at times determined by the court. The court may order the proportion of any indigent party to be paid by the county social service board of the county in which the child resides or is found. In addition, the court may award reasonable attorney's fees if an award is permitted under chapter 28–26."

■ Sam argues Walter's appeal is frivolous under N.D.C.C. § 28–26–01(2). We disagree. Walter's appeal raises significant issues about the application of the statute of limitations to this factual situation. We hold that Pam and Sam are not entitled to attorney's fees for this appeal. See, e.g., *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73 (N.D.1991); *Larson v. Baer*, 418 N.W.2d 282 (N.D.1988).

We affirm the judgment.

MESCHKE, MARING and NEUMANN, JJ., and MICHAEL O. McGUIRE, District Judge, concur.

MICHAEL O. McGUIRE, District Judge, sitting in place of SANDSTROM, J., disqualified.

---

4. The prior law allowed a court in a paternity action to award "reasonable fees of counsel ... to be paid by the parties in proportions and at times determined by the court" without reference to N.D.C.C. Ch. 28–26.