1997 ND 95

**Caroline HOVLAND and Daryl Hovland, individually and as wife and husband, Plaintiffs and Appellants,**

v.

**CITY OF GRAND FORKS, Defendant and Appellee.**

**Civil No. 960269.**

Supreme Court of North Dakota.

May 13, 1997.

Rehearing Denied June 24, 1997.

---

Shirley A. Dvorak of Moosbrugger, Dvorak & Carter, Grand Forks, for plaintiffs and appellants. Submitted on brief.

Ronald F. Fischer of Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for defendant and appellee. Submitted on brief.

NEUMANN, Justice.

[¶ 1] Caroline and Daryl Hovland appeal from a summary judgment in ·favor of the City of Grand Forks, dismissing the Hovlands' claim for injuries Caroline sustained while in-line.skating on a city bike path. We reverse the district court's decision and hold the City is not immune under North Dakota's recreational use statute.

[¶ 2] In 1993, Caroline Hovland was injured while in-line skating with her daughter, Carla, and stepson, Derek, on a bike path owned and maintained by the City of Grand. Forks. The bike path was adjacent to the Red River and was somewhat rolling. Caroline, Carla, and Derek approached a slight decline in the bike path; at the bottom of this decline, a section of the asphalt was damaged. Carla, skating in front of Caroline, avoided the damaged asphalt. Caroline hit the damaged portion and fell, suffering a broken wrist.

[¶ 3] The Hovlands sued the City for Caroline's injuries under a negligence theory. They asserted the City knew the bike path was used for in-line skating and had a duty to inspect and maintain all bike path areas. An engineer's aid construction coordinator with the City testified in a deposition that he inspected the City's entire bike path system

annually. However, in 1992 and 1993, he explained he did not inspect the portion where Caroline sustained her injuries because of confusion over responsibility for that section. The Hovlands claimed the City's failure to inspect and maintain the bike path caused Caroline's injuries.

[¶ 4] The City moved for summary judgment, contending it was immune from suit under North Dakota's recreational use statute, N.D.C.C. ch. 53–08, citing *Fastow v. Burleigh County Water Resource Dist.*, 415 N.W.2d 505 (N.D.1987). The district court, relying on *Fastow*, granted the City's summary judgment motion, stating "[i]t is well settled law that the recreational use statute does apply to political subdivisions as well as private land." The Hovlands appeal the judgment, arguing the immunity under the recreational use statute, N.D.C.C. ch. 53–08, does not shield the City from liability for injuries resulting on a damaged bike path.

[¶ 5] Summary judgment is a procedure for promptly disposing of a lawsuit without a trial. *P.E. v. W.C.*, 552 N.W.2d 375, 380 (N.D.1996). If, after viewing the evidence in the light most favorable to the non-moving party and giving that party the benefit of all favorable inferences, there is no genuine issue of dispute as to the facts or any inferences to be drawn from the undisputed facts, or if the only question presented is a question of law, summary judgment is proper. *Id.* at 380 (citing *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D. 1996)). *See* Rule 56, N.D.R.Civ.P. In reviewing an appeal from a summary judgment, we view the evidence in the light most favorable to the non-moving party and then determine if the trial court properly granted summary judgment as a matter of law. *Er-*

*telt v. EMCASCO Ins. Co.*, 486 N.W.2d 233, 234 (N.D.1992) (citing *Binstock v. Tschider*, 374 N.W.2d 81, 83 (N.D.1985)).

[¶ 6] In 1965, North Dakota created a recreational use immunity statute to protect landowners who opened their land for recreational purposes. *See* N.D. Sess. Laws, ch. 337 (1965), codified at N.D.C.C. ch. 53–08. Under N.D.C.C. § 53–08–02 "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." [1]

[¶ 7] The City of Grand Forks argues the recreational use statute shields it from liability for Hovland's in-line skating accident on the public bike path. [2] In making this argument, the City relies on a part of *Fastow* which discusses applying the recreational use statute, N.D.C.C. ch. 53–08, to the political subdivision liability statute, N.D.C.C. § 32–12.1–03(1). *Fastow*, 415 N.W.2d at 508. According to the City, *Fastow* holds that because political subdivisions are only liable when private landowners are liable under N.D.C.C. § 32–12.1–03(1), [3] political subdivisions are not liable in recreational use lawsuits because private landowners are not liable. *Id.* We disagree.

[¶ 8] In *Fastow*, this court reversed a summary judgment dismissing Fastow's claim, holding that under N.D.C.C. § 32–12.1–05, the defendant political subdivisions had waived whatever right to governmental immunity they might have had by purchasing insurance coverage. *Fastow*, 415 N.W.2d at 510. Although *Fastow* discusses N.D.C.C. ch. 53–08 and states "the liability protections of Chapter 53–08, N.D.C.C., [are] applicable

1. The act also provides that any willful or malicious failure to warn parties of any dangerous conditions will result in liability. N.D.C.C. § 53–08–05. *See Stokka v. Cass County Electric Co-op., Inc.*, 373 N.W.2d 911, 916 (N.D.1985) (discussing the definition of willful conduct).

2. The City relies on the version of the statute that existed in 1993. In 1995, this statute was amended. *See infra* note 5.

3. Section 32–12.1–03(1) provides,
   "Each political subdivision is liable for money damages for injuries when the injuries are

proximately caused by the negligence or wrongful act or omission of any employee acting within the scope the employee's employment or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, *under circumstances where the political subdivision, if a private person, would be liable to the claimant.*" (Emphasis added.)

to political subdivisions in the same manner and under the same circumstances as those protections are applicable to a private owner of recreational land," that discussion was immaterial to the holding. *Id.* at 508. To reach our holding in *Fastow*, this court did not need to discuss whether N.D.C.C. ch. 53–08 provided the government with immunity under N.D.C.C. § 32–12.1–03(1); the application of N.D.C.C. § 32–12.1–05 waived any possible governmental immunity defense. Contrary to the City's contention that *Fastow* establishes political subdivision immunity under N.D.C.C. ch. 53–08, the *Fastow* court's discussion of N.D.C.C. ch. 53–08 is a dictum, and we are not compelled by *stare decisis* to follow it here.

[¶ 9] The Hovlands argue N.D.C.C. § 53–08–02 was not intended to insulate political subdivisions from liability. The legislature's intent, the Hovlands maintain, was to encourage private landowners to open their land for recreational purposes. The Hovlands rely on cases from several other jurisdictions as well as the "Model Act" to support their argument. This Model Act, drafted by the Council of State Governments as "Suggested State Legislation," is very similar to North Dakota's recreational use statute. The suggested legislation states it "is designed to encourage availability of *private lands* by limiting the liability of owners...." (Emphasis added.) 24 Council of State Governments, "Public Recreation of Private Lands: Limitations on Liability," *Suggested State Legislation*, 150 (1965).

[¶ 10] An independent review of N.D.C.C. § 53–08–02 leads us to agree with the Hovlands. The legislative history of N.D.C.C. § 53–08–02 indicates the law was intended to encourage landowners to open their land to the public for recreational purposes. Hearing on S.B. 312, Minutes from the Senate Agriculture Committee, 39th Legislative Assembly, February 4, 1965. At the time the statute was enacted, public lands enjoyed immunity from liability in all civil actions and thus did not need protection.

Furthermore, according to the legislative history, the statute was patterned after Indiana's. *Id.* Indiana did not intend to grant immunity to political subdivisions under their recreational use statute. *See City of Bloomington v. Kuruzovich,* 517 N.E.2d 408, 414 (Ind.App. 4 Dist.1987).

[¶ 11] The City argues this interpretation does not account for our political subdivision liability statute which makes political subdivisions liable *only* when private landowners are liable; we disagree. We have often said that we will not interpret a statute in a manner that produces an absurd or ludicrous result. *Estate of Laschkewitsch,* 507 N.W.2d 65, 67 (N.D.1993); *Keepseagle v. Backes,* 454 N.W.2d 312, 315 (N.D.1990). If we adopt the City's proposed interpretation of the statute, political subdivisions would be immune for all the recreational purposes outlined in N.D.C.C. § 58–03–01(4).[4] This would give political subdivisions immunity for injuries caused any time a person used public roads or public property for "purposes of the user." N.D.C.C. § 58–03–01(4). This definition is so broad, it would be hard to conceive an injury for which the political subdivision could not claim immunity. In essence, it would reinstate governmental immunity in North Dakota. In *Kitto v. Minot Park Dist.,* 224 N.W.2d 795 (N.D.1974), this court abolished the doctrine of governmental immunity as it applied to political subdivisions, but only applied the holding to the parties, expressly reserving the legislature's right to enact legislation on the subject. *Id.* at 804. The legislature followed *Kitto* by providing for the liability of political subdivisions under N.D.C.C. § 32–12.1–03. *See also Bulman v. Hulstrand Const. Co.,* 521 N.W.2d 632, 634 (N.D.1994) ("Although ... Art. I, § 9, N.D. Const., is not absolute in that it does not require a remedy for every alleged wrong, ... it does guarantee an important substantive right—the right of access to courts for the redress of wrongs."). Applying the recreational use statute to the political subdivi-

4. Prior to 1995, N.D.C.C. § 53–08–01(4) stated " 'Recreational purposes' includes, but is not limited to, any one or any combination of the following: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and visiting, viewing, or enjoying historical, archaeological, geological, scenic, or scientific sites, or otherwise using land for *purposes of the user.*" (Emphasis added.)

sion liability statute completely circumvents the legislature's intent under N.D.C.C. § 32–12.1–03 and leads to an unintended and absurd result.

■ [¶ 12] Moreover, if a statute is susceptible of two constructions, one that would render it of doubtful constitutionality and one that would not, this court must adopt the construction rendering it constitutional. *Adoption of K.A.S.*, 499 N.W.2d 558, 567 (N.D.1993); *see also Hanson v. Williams County*, 389 N.W.2d 319, 324 (N.D.1986); *Patch v. Sebelius*, 320 N.W.2d 511, 513 (N.D. 1982); N.D.C.C. § 1–02–38(1)(explaining that in enacting a statute, compliance with the state and federal constitution is presumed). Interpreting the statute as the City suggests raises a serious equal protection question.

[¶ 13] If public lands were granted immunity for all recreational activities, Caroline could not recover for her injuries because she was using the bike path for a recreational use, but had she been using the bike path for a non-recreational use she would be allowed to recover. This interpretation allows the government to treat two classes of persons injured on public lands differently: it forbids recovery for personal injuries incurred during recreational activities, but permits recovery for personal injuries incurred during non-recreational activities. The recreational use immunity statute was created to encourage private landowners to permit public access to private lands. In the context of public access to private lands, the disparate treatment of recreational users seems to make sense. In the context of public access to public lands, the disparate treatment is much harder to understand.

■ [¶ 14] North Dakota law examines an equal protection challenge under three possible standards of review: rational basis, intermediate scrutiny, and strict scrutiny. *See Hanson*, 389 N.W.2d at 323–25. A rational basis review is most often applied in economic and social matters. *Id.* at 325. Under a

rational basis review, a legislative classification will be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *Id.* at 323. An intermediate level of review is most often applied when "an important substantive right" is involved. *Id.* at 325. This standard requires a "close correspondence between statutory classification and legislative goals." *Id.* at 323. Finally, before we will apply strict scrutiny, the issue must involve "inherently suspect" or "fundamental interest" classifications. *Id.*

[¶ 15] In *Hanson*, this court held the right to recover for a personal injury is an important substantive right deserving an intermediate standard of review.

"We are unwilling to view human life and safety as simply a matter of economics.... [T]he right to recover for personal injuries is an important substantive right."

*Id.* at 325. *See* N.D. Const., Art. I, § 20 ("everything in this article [DECLARATION OF RIGHTS] is excepted out of the general powers of government and shall forever remain inviolate.").

[¶ 16] Here, because the City's interpretation of the recreational use statute limits recovery for personal injury, we would examine the classification under an intermediate standard of review. Specifically, we would determine whether there is a "close correspondence between statutory classification and legislative goals." The legislative history does not disclose any reason why a recreational user of public lands could not recover for personal injuries when a non-recreational user could. Without a close correspondence with legislative goals supporting this classification, the statute might well fail an equal protection challenge under an intermediate standard of review.[5]

[¶ 17] We, therefore, reverse the district court's decision granting summary judgment

5. Since *Fastow*, the legislature has amended the recreational use statute to include all public lands, as well as private lands. N.D. Sess. Laws, ch. 337, § 1 (1995). In this amendment, N.D.C.C. § 53–08–01(2) defines "land" to include all public "land, roads, water, water-courses, ways and buildings, structures and machinery or equipment thereon." Furthermore, N.D.C.C. § 53–08–01(4) defines a recreational purpose to include any activity engaged in "for the purpose of exercise, relaxation, pleasure, or education."

and hold the City is not immune under North Dakota's recreational use statute.

[¶ 18] MARING and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

[¶ 19] I join in the majority opinion. I write separately only to question the dissent's excessive complaint that "the majority opinion ... does not augur well for any form of governmental immunity." To the contrary, *Bulman*, 521 N.W.2d at 640, carefully stated "our decision should not be interpreted as imposing tort liability on the State for the exercise of discretionary acts in its official capacity, including legislative, judicial, quasi-legislative and quasi-judicial functions." *See also Kitto*, 224 N.W.2d at 804:

> We do not contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation. We hold that no tort action will lie against governmental units for those acts which may be termed discretionary in character. Included within this category are acts traditionally deemed legislative or quasi-legislative, or judicial or quasi-judicial, in nature. The exercise of discretion carries with it the right to be wrong. It is for torts committed in the execution of the activity decided upon that liability attaches, not for the decision itself.

Nor does today's decision place official discretionary immunity in jeopardy.

[¶ 20] Herbert L. Meschke

VANDE WALLE, Chief Justice, dissenting.

[¶ 21] In *Fastow v. Burleigh County Water Resource Dist.*, 415 N.W.2d 505, 508 (N.D. 1987), we said "the liability protections of Chapter 53–08, N.D.C.C., [are] applicable to political subdivisions in the same manner and under the same circumstances as those pro-

tections are applicable to a private owner of recreational land."

[¶ 22] In reaching this conclusion, we applied N.D.C.C. § 32–12.1–03(1),[6] which was enacted following our ruling in *Kitto v. Minot Park Dist.*, 224 N.W.2d 795 (N.D.1974). In *Kitto*, the court abolished the doctrine of governmental immunity as it applied to political subdivisions, but only applied the holding to the parties, while expressly reserving the right to the legislature to enact legislation on the subject. 224 N.W.2d at 804. The legislature did so, enacting section 32–12.1–03. In interpreting this section, the court stated:

> "a political subdivision is liable for injury caused from a condition or use of real property only under those circumstances in which a private person would be liable for such an injury. We believe that this provision unambiguously makes the liability protections of Chapter 53–08, N.D.C.C., applicable to political subdivisions in the same manner and under the same circumstances as those protections are applicable to a private owner of recreational land."

*Fastow*, 415 N.W.2d at 508.

[¶ 23] Although the legislature has made other changes to Chapter 53–08 which appear to strengthen the immunity, *see* fn. 2, it has not amended Chapter 53–08 to counteract our decision in *Fastow*. *See Effertz v. North Dakota Workers Compensation Bureau*, 525 N.W.2d 691, 693 (N.D.1994) ("[t]he legislature is presumed to know the construction of its statutes ... and the failure to amend the statute indicates legislative acquiescence in that construction").

[¶ 24] Obviously unhappy with the holding in *Fastow*, the majority relegates it to dictum which the majority "is not compelled by stare decisis to follow here." The majority rationalizes that it was not necessary to decide the issue of immunity because the *Fastow* court held the purchase of insurance waived that immunity. I disagree. If there was no im-

---

6. Section 32–12.1–03(1) provides,

    "Each political subdivision is liable for money damages for injuries when the injuries are proximately caused by the negligence or wrongful act or omission of any employee acting within the scope the employee's employment or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, under circumstances where the political subdivision, if a private person, would be liable to the claimant."

munity it would not have been necessary to resolve the issue of whether or not the purchase of insurance waived that immunity. Because of the interplay between Chapter 53–08 and Chapter 32–12.1, N.D.C.C., it is obvious the immunity issue had to be decided in *Fastow*. The *Fastow* opinion specifically notes that "[d]etermination of the following issues are necessary to resolve this case on appeal: (1) Whether or not Chapter 53–08, N.D.C.C., which limits liability of recreational landowners, is applicable to political subdivisions; and . . . ." *Fastow*, 415 N.W.2d at 507.

[¶ 25] But whether or not the conclusion that the recreational use statutes apply to political subdivisions is holding or dictum is of little import, for it is apparent the majority is displeased with the holding and the result it would lead to in this case and would overrule it in any event.

[¶ 26] Hovlands and the majority contend Chapter 53–08 does not apply to the bike path because affording the City immunity in this case runs counter to the intent of the statute. They opine the statute was never intended to cover property with the characteristics of a public bike path. The statute's intent, they maintain, was to encourage private landowners to open their land for recreational purposes. This uniform law, which was drafted by the Council of State Governments as "Suggested State Legislation," is very similar to North Dakota's Recreational Use Statute. 24 Council of State Governments, "Public Recreation on Private Lands: Limitations on Liability," *Suggested State Legislation*, 150 (1965). The Hovlands' arguments, embraced by the majority, ignore the already well-established position of this court that political subdivisions operating recre-

ational areas are included under the immunity found in Chapter 53–08.

[¶ 27] The Hovlands also contend it is not the public/private distinction which dictates whether recreational immunity exists, but rather the characteristics of the property. The recreational area in *Fastow* was a man-made lake in an essentially rural area and the bike path here is in a somewhat more urban setting. However, we do not split such a fine hair. Most significantly, there is nothing in Chapter 53–08 which specifies the immunity granted should only apply to rural, open areas. If the legislature intended such an application, it would have likely stated so, or following our decision in *Fastow*, amended the statute accordingly. *Effertz*, 525 N.W.2d at 693. The location and surroundings of the recreational area are not determinative as to whether immunity should be provided.

[¶ 28] Bike paths are within Chapter 53–08's definition of "land." Section 53–08–01(1) states, " '[l]and' includes roads, water, watercourses, private ways and buildings, structures and machinery or equipment thereon when attached to the realty." [7] This list is not exhaustive, and thus does not include bike paths. In the original definition of land, Chapter 53–08 differed from the Model Act, which defines land as, "*land*, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty." 24 Council of State Governments, "Public Recreation on Private Lands: Limitations on Liability" *Suggested State Legislation*, 151 (1965).

[¶ 29] Nor was the omission of the word "land" from the definition of land an attempt by the legislature to narrow the application

---

7. This section was amended in 1995 to provide, " '[l]and' includes *all public and private land*, roads, water, watercourses, ways and buildings, structures and machinery or equipment thereon." (emphasis added) This amendment became effective on March 20, 1995. For our purposes, the amended definition of "land" does not apply. It appears the amendment was made to cure a "curious omission." *House Agriculture Committee, 1995 Standing Committee Minutes on SB 2127* (Feb. 9, 1995). *See* definition of recreational purposes, N.D.C.C. § 53–08–01(4), " '[r]ecreational purposes' includes, but is not limited to, any one or any combination of the following: hunting, fishing, swimming, boating, camping,

picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and visiting, viewing, or enjoying historical, archaeological, geological, scenic, or scientific sites, *or otherwise using land for purposes of the user.*" (emphasis added) It is clear that in-line skating, although not specifically listed, would be a recreational use upon "land" similar to that of "pleasure driving."

Although this statute was amended in 1995 to read " '[r]ecreational purposes' includes any activity engaged in for the purpose of exercise, relaxation, pleasure, or education[,]" the previous definition applies for our purposes here.

of the statute. No legislative history indicates such intent. The trial court found the bike path fell under the statutory definition of land and I agree. If the areas immune from suit were so strictly interpreted as to include only the various items listed in section 53–08–01(1), the intent of the legislature to provide immunity to those landowners who open their land for recreational purposes would be circumvented. To hold that a bike path, a course clearly designed for recreation, should not be included under the statute's definition of land contradicts the purpose of the act, and I would not interpret the statute in this manner. *See Americana Healthcare v. Dept. of Human Serv.*, 510 N.W.2d 592 (N.D.1994) (use of word "includes" indicates an incomplete list).

[¶ 30] Faced with section 32–12.1–03(1), N.D.C.C., and the construction placed on that language in *Fastow*, i.e., "[u]nder the foregoing provision a political subdivision is liable for injury caused from a condition or use of real property only under those circumstances in which a private person would be liable for such injury," *Fastow* at 508, the majority concludes the result is absurd. But, it is a result the Legislature did not dispute after the *Fastow* decision, but rather reinforced. Not only did the Legislature not counter-act the decision in *Fastow*, it reinforced it through its recent amendment. *See* fn. 2.

[¶ 31] Apparently recognizing the weakness of its legislative-intent argument, the majority observes the construction giving the City immunity "might well fail an equal protection challenge under an intermediate standard of review," forecasting, I assume, its holding on the 1995 amendments which seem to enact exactly what the majority now says was not intended. I expect there may be several reasons which would establish a "close correspondence between statutory classification and legislative goals" in holding the City immune from liability for injury to recreational users. This Court in *Kitto*, 224 N.W.2d at 803, did, after all, observe "this area of governmental liability is one which the legislature can[ ] modify or shape within its constitutional authority." Notwithstanding these words in *Kitto*, the majority opinion, coming on the heels of *Bulman v. Hulst-*

*rand Const. Co., Inc.*, 521 N.W.2d 632, 639 (N.D.1994) (holding sovereign immunity is "outdated and is no longer warranted"), does not augur well for any form of governmental immunity.

[¶ 32] I would affirm the judgment of the district court.

[¶ 33] SANDSTROM, J., concurs.