2012 ND 253

**D.E., Plaintiff and Appellant**

v.

**K.F. and M.F., Defendants
and Appellees.**

No. 20120069.

Supreme Court of North Dakota.

Dec. 18, 2012.

Theresa L. Kellington, Bismarck, N.D., for plaintiff and appellant.

Ashley E. Holmes, Dickinson, N.D., for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] The child, S.B., is an orphan. Her mother and presumed father are dead. No one is claiming custody through

either parent. K.F. and M.F. physically have the child and claim to be "private foster parents" even though they are not related to the child and no legal authority for their possession appears. They were given the child by J.H., who is not related to the child but thinks he may be "technically the guardian" even though the record reflects no appointment as a guardian. D.E. believes he is the biological father. He sued, seeking to establish his paternity of the orphan child, and named K.F. and M.F. as defendants, apparently because they physically have the child. K.F. and M.F. objected to the paternity action going forward, and the district court dismissed the case. We conclude that the district court should have appointed a guardian ad litem for the child and that K.F. and M.F. had no right to challenge the paternity action as they did. We reverse and remand for further proceedings.

I

[¶ 2] D.B. is the biological mother of the child, who was born in 2001. D.B. and E.B. were married in December 2000 and are listed as the mother and father on the child's 2001 birth certificate. E.B. died in 2003, and D.B. died in 2009.

[¶ 3] In July 2011, D.E. began this proceeding under N.D.C.C. ch. 14–20 against K.F. and M.F., with whom the child presently resides, alleging he is the child's biological father. D.E. requested the district court to order a paternity test and, if found to be the child's biological father, to immediately award him sole residential and decision-making responsibility for the child. K.F. and M.F. answered, claiming they are acting as the child's "private foster parents" and are in the "process of seeking" legal guardianship, although there was no record such a proceeding had begun. K.F. and M.F. moved to dismiss this proceeding, asserting D.E. failed to

state a claim for which relief could be granted because N.D.C.C. § 14–20–42 "bar[red] all actions for paternity testing filed later than two years after the birth of the child when there is a presumed father."

[¶ 4] After an evidentiary hearing, the district court decided D.E.'s request was time-barred by the two-year limitation period in N.D.C.C. § 14–20–42(1) and dismissed the proceeding. The court specifically found that E.B. and D.B. were married when the child was born and that E.B. was the "presumed" father of the child. In deciding D.E. failed to establish an exception to the two-year limitation in N.D.C.C. § 14–20–42(2), the court found there was not sufficient evidence to show E.B. and D.B. did not cohabit during the probable time of conception and never engaged in sexual intercourse with each other during the probable time of conception. The court also found there was not sufficient evidence showing E.B. never openly held the child out as his own child. Rather, the court found there was evidence showing E.B. had openly held out the child as his own child. The court concluded D.E. failed to meet threshold requirements to maintain a proceeding to adjudicate the parentage of a child with a presumed father more than two years after the child's birth.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 14–20–04, 14–20–36, and 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 6] D.E. argues N.D.C.C. ch. 14–20 does not apply to the "very unusual" circumstances in this case. He further argues that if N.D.C.C. ch. 14–20 does apply,

the statutes should be interpreted in his favor to address the specific circumstances. D.E. asserts there is a "high probability" he is the father, based on a prior event of sexual intercourse with the child's biological mother and based on alleged erectile dysfunction of the child's presumed father.

■ [¶ 7] Interpretation of a statute is a question of law, fully reviewable on appeal. *Gerhardt v. C.K.*, 2008 ND 136, ¶ 5, 751 N.W.2d 702. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

[¶ 8] Chapter 14–20, N.D.C.C., applies to the determination of parentage in North Dakota. N.D.C.C. §§ 14–20–01, 14–20–03(1). Section 14–20–04, N.D.C.C., authorizes the district court to adjudicate parentage under chapter 14–20. *See Schirado v. Foote*, 2010 ND 136, ¶ 9, 785 N.W.2d 235. Under N.D.C.C. § 14–20–36, a civil proceeding is authorized to adjudicate a child's parentage and is governed by the North Dakota Rules of Civil Procedure. *See also* N.D.R.Civ.P. 81 and Table A.

[¶ 9] Section 14–20–02(16), N.D.C.C., defines a "presumed father" as "a man who, by operation of law under section 14–20–10, is recognized as the father of a child *until that status is rebutted or confirmed in a judicial proceeding.*" (Emphasis added.) Section 14–20–02(2), N.D.C.C., defines an "adjudicated father" as "a man who has been adjudicated by a court of competent jurisdiction to be the father of a child." As relevant to this case, under

N.D.C.C. § 14–20–07(2)(a), "[t]he father-child relationship is established between a man and a child by: a. An unrebutted presumption of the man's paternity of the child under section 14–20–10; . . . c. An adjudication of the man's paternity."

[¶ 10] A presumption of paternity arises when a man is married to the mother of the child and the child is born during the marriage. N.D.C.C. § 14–20–10(1)(a). The paternity presumption established under N.D.C.C. § 14–20–10 "may be rebutted *only by an adjudication* under sections 14–20–36 through 14–20–58." N.D.C.C. § 14–20–10(2) (emphasis added). Section 14–20–42, N.D.C.C., however, provides a time limitation for proceedings when a child has a presumed father:

1. *Except as otherwise provided in subsection 2*, a proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father must be commenced *not later than two years after the birth of the child.*

2. A proceeding seeking to disprove the father-child relationship between a child and the child's presumed father *may be maintained at any time if the court determines that:*

   a. The presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception; *and*

   b. The presumed father never openly held out the child as his own.

3. For purposes of this section and section 14–20–43, an action to establish support for a child is a proceeding to adjudicate parentage if the child's presumed father raises nonpaternity as a defense to the action.

N.D.C.C. § 14–20–42 (emphasis added).

■ [¶ 11] Thus, although there is a two-year statute of limitations for proceed-

ings to disprove a presumed father's relationship after the child's birth, a proceeding may be maintained "at any time" if the court finds both of the stated conditions are met under N.D.C.C. § 14–20–42(2)(a) and (b). Generally, a defense based on the statute of limitations in a civil proceeding is an affirmative defense, and the party relying on the statute of limitations has the burden of proving the action is barred. *See Interest of K.B.*, 490 N.W.2d 715, 717 (N.D.1992); *McCarter v. Pomeroy*, 466 N.W.2d 562, 566 (N.D.1991) (citing 54 C.J.S., *Limitations of Actions* § 294 (1987)). We have also said that " 'a party who claims the benefit of an exception to a statute of limitations bears the burden of showing the exception.' " *F/S Mfg. v. Kensmoe*, 2011 ND 113, ¶ 26, 798 N.W.2d 853 (quoting *Kimball v. Landeis*, 2002 ND 162, ¶ 29, 652 N.W.2d 330); *see, e.g., In re J.H.*, 264 S.W.3d 919, 922 (Tex.Ct.App.2008); *In re Rodriguez*, 248 S.W.3d 444, 451 (Tex.Ct. App.2008). *See generally* Unif. Parentage Act (2000) § 607 cmt. (updated 2002) (explaining difficult policy choices of limiting proceedings to disprove a presumed father's relationship).

III

[¶ 12] Although D.E. generally argues N.D.C.C. ch. 14–20 does not apply to the unusual circumstances in this case, we conclude the dispositive issue is whether K.F. and M.F. were proper parties to raise the statute of limitations defense under N.D.C.C. § 14–20–42.

[¶ 13] Generally, courts have held in various contexts that "the defense of the running of the statute of limitations is regarded as a personal privilege, which must be raised, and which may be waived." 54 C.J.S., *Limitations of Actions* § 35 (2010) (cases cited therein). "The general view is that only the person *for whose benefit the statute inures or someone*

*standing in that person's place*, may take advantage of it, and not a stranger." *Id.* (emphasis added). "As a rule, the defense may not be asserted by one party on behalf of another person." *Id.* Under those general principles, our decision in *P.E. v. W.C.*, 552 N.W.2d 375, 379 (N.D.1996), provides guidance for this issue.

[¶ 14] In *P.E.*, 552 N.W.2d at 377, the child's biological mother and her husband were married in 1982, separated in 1984, and divorced in February 1986 under a stipulation providing no children had been or would be born of the marriage. A child was subsequently born in June 1986. *Id.* The biological mother had begun a relationship with the reputed father in 1985 and asserted he was the only person with whom she was having sexual relations when the child was conceived. *Id.* In 1991, the biological mother commenced a paternity action against the reputed father, alleging he was the natural father and seeking child support. *Id.* The reputed father moved to dismiss the action, claiming it was commenced more than five years after the child was born and thus barred under former law, N.D.C.C. § 14–17–05(1)(b). *P.E.*, at 377.

[¶ 15] This Court held the reputed father could not use the five-year statute of limitations as a shield against his claimed parental obligations, reasoning the reputed father was "not in the 'limited circle of potential contestants' authorized [under former law, N.D.C.C. § 14–17–05(1)(b),] to attack the presumption of paternity based on marriage." *P.E.*, 552 N.W.2d at 379. This Court explained that under the prior law, the "intended beneficiaries" of the time limitation under N.D.C.C. § 14–17–05(1)(b) to challenge a presumption of paternity were the child, the natural mother, or presumed fathers by marriage. *P.E.*, at 379. This Court explained none of these "intended beneficiaries" had raised the

statute of limitation as an affirmative defense in the proceeding. *Id.* This Court ultimately held the reputed father could not use the five-year limitation period under the prior law to shield against his claimed parental obligations and to preclude the presumed father from rebutting the paternity presumption. *Id.; see also Interests of S.L.W.,* 2010 ND 172, ¶ 8, 788 N.W.2d 328 (holding alleged father could not challenge 2004 judgment disestablishing presumed father's paternity under five-year statute of limitations waived in prior action to disestablish paternity); *B.H. v. K.D.,* 506 N.W.2d 368, 373–74 (N.D.1993) (holding man claiming to be father of child born during marriage of mother and presumed father lacked standing to bring action disputing child's paternity); *Interest of K.B.,* 490 N.W.2d at 718 (holding reputed father could not use five-year statute of limitations under prior law to shield against his alleged parental obligations and to preclude a presumed father from rebutting the presumption).

[¶ 16] The current provisions of the U.P.A., N.D.C.C. § 14–20–37, specifically list those individuals and entities with standing to maintain a proceeding to adjudicate parentage:

Subject to sections 14–20–11 through 14–20–24 and sections 14–20–42 and 14–20–44, a proceeding to adjudicate parentage may be maintained by:

1. The child;

2. The mother of the child;

3. A man whose paternity of the child is to be adjudicated;

4. The support enforcement agency;

5. An authorized adoption agency or licensed child-placing agency; or

6. *A representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated, or a minor.*

(Emphasis added.) *See R.F. v. M.M.,* 2010 ND 195, ¶¶ 6, 13, 789 N.W.2d 723 (stating "[s]tanding is a question of law, which we review de novo on appeal" and holding grandparent appointed personal representative of son's estate had standing to bring paternity action on deceased son's behalf). By describing a list of the individuals and entities with standing to maintain proceedings to adjudicate parentage, the legislature has also designated potential "intended beneficiaries" of the statutes, subject to the specified statutory limitations. Similarly, although D.E. had standing to maintain the proceedings, subject to the statutory limitations, K.F. and M.F. have not established that they are "intended beneficiaries" of the statutes or that they have sufficient personal interest in the proceeding to raise the statute of limitations defense in N.D.C.C. § 14–20–42.

[¶ 17] K.F. testified that while D.B. was alive, K.F. had provided daycare to the child from the time the child was four years of age and that the child was eight years old when her mother died. K.F. testified that she had known the child longer than anyone else in the child's life. While it is undisputed that the child, after moving between different residences after her mother's death, presently resided with K.F. and M.F., this record reflects no legal right or interest that they have to make decisions for the child or to represent her interests in this proceeding. To the contrary, this record reflects no legal guardianship, and custody remains muddled or lacking.

[¶ 18] For example, although not named as a party to these proceedings, J.H., who is D.B.'s ex-husband from a marriage prior to her marriage to E.B., stated in an affidavit that after D.B.'s death, he took "temporary custody" of the child "so

she would not have to be placed in a foster home." J.H. further testified at the hearing that he "technically" still had "temporary guardianship" of the child even though he stated no reason for believing this, but court records do not reflect it. Further, both K.F. and M.F. testified they are "private" foster parents, though apparently not through any state or county agency. *See* N.D.C.C. § 50–11–00.1(8)[1] ("'Foster care for children' means the provision of substitute parental child care for those children who are in need of care for which the child's parent, guardian, or custodian is unable, neglects, or refuses to provide, and includes the provision of food, shelter, security and safety, guidance, and comfort on a twenty-four-hour basis, to one or more children under twenty-one years of age to safeguard the child's growth and development and to minimize and counteract hazards to the child's emotional health inherent in the separation from the child's family."); N.D.C.C. § 50–11–01 (subject to specified exceptions, "[n]o person may furnish foster care for children for more than thirty days during a calendar year without first procuring a license to do so from the department").

[¶ 19] On this record, we conclude that K.F. and M.F. are not within the "intended beneficiaries" of the statute of limitations defense under N.D.C.C. § 14–20–42 and were not proper parties to raise this defense in D.E.'s statutory proceeding. We therefore reverse the district court's order dismissing the proceeding and remand for additional proceedings to protect the interests of the child.

IV

[¶ 20] On the basis of our review of the record, we conclude the child's interests were not adequately represented in the proceedings below. Section 14–20–47, N.D.C.C., provides the district court must appoint a guardian ad litem under certain circumstances:

1. A minor child is a permissible party, but is not a necessary party to a proceeding under sections 14–20–36 through 14–20–58.

2. The court shall appoint a guardian ad litem to represent a minor or incapacitated child if the child is a party *or the court finds that the interests of the child are not adequately represented.*

(Emphasis added.)

[¶ 21] In this case, the child is an orphan whose biological mother and presumed father are deceased. Under N.D.C.C. § 14–20–38, both the "mother of the child" and a "man whose paternity of the child is to be adjudicated" must be joined in a proceeding to adjudicate parentage. Although N.D.C.C. § 14–20–47(1) clearly states a minor child is a permissible party, but not a necessary party, to proceedings under N.D.C.C. §§ 14–20–36 through 14–20–58, the child does in fact have standing to maintain such proceedings. *See* N.D.C.C. § 14–20–37(1).

[¶ 22] As discussed, the child's legal guardianship and custody status are at best unclear on this record. Although the child's deceased biological mother plainly could not be named as a party, no other legal representative or legal guardian for the child was made a party to these proceedings in her stead. Section 14–20–47, N.D.C.C., provides that the child is merely a permissible party and need not be named as a party to proceedings under N.D.C.C. §§ 14–20–36 through 14–20–58. However, the absence of any party representing in

---

1. Before August 1, 2011, this definition was found at N.D.C.C. § 50–11–00.1(7). *See* 2011 N.D. Sess. Laws ch. 357, § 1.

any legal capacity the child's interests is problematic, and we conclude the child's interests in this case do not appear to have been adequately represented. *Cf. In re Parentage of Q.A.L.*, 146 Wash.App. 631, 191 P.3d 934, 937–38 (2008) (holding child had standing to maintain a statutory proceeding to adjudicate parentage, guardian ad litem should have been appointed, and remanding for appointment of guardian ad litem to represent child's interests in determining whether genetic testing should be conducted and whether the child should initiate a proceeding to adjudicate his parentage).

[¶ 23] Under these limited circumstances, we conclude the district court erred in failing to appoint a guardian ad litem for the child under N.D.C.C. § 14–20–47, and the district court on remand should appoint a guardian ad litem to represent the child's interests in any further proceedings. On remand, the guardian ad litem may undertake action as provided by law necessary to clarify the child's status. *See, e.g.*, N.D.C.C. § 14–20–45 ("proceeding to adjudicate parentage may be joined with a proceeding for adoption, termination of parental rights, child custody or visitation, child support, . . . probate or administration of an estate, or other appropriate proceeding"). We remand for appointment of a guardian ad litem and additional proceedings.

V

[¶ 24] We reverse the district court order and remand for proceedings consistent with this opinion.

[¶ 25] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.