**James Edward HARLAN and Linda Costello**

**v.**

**James Walter FRAZIER, Jr., et al.**

**Civ. A. No. 84–1624.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

May 27, 1986.

Frank Lamothe, III, Barham & Churchill, New Orleans, La., Michael J. Kleinman, Zuckerman & Kleinman, Denver, Colo., and

John W. Montgomery, Fish, Montgomery & Robinson, Minden, La., for plaintiffs.

James B. Gardner, Lunn, Irions, Switzer, Johnson & Salley, Shreveport, La., and John T. Campbell, Campbell, Campbell & Johnson, Minden, La., for defendants.

## MEMORANDUM RULING

STAGG, Chief Judge.

In mid-June, 1983, James Edward Harlan, age 17, and three female high school classmates drove from Aurora, Colorado to Minden, Louisiana to attend a wedding. During the latter part of the evening of June 17, after all the wedding festivities were over, the four young people from Colorado went with Jim Megehee, who lived in nearby Dubberly, to find where other young people might be. "We made a loop through Minden and then we went and nobody was uptown so we went to Dixie Inn." At a liquor store in Dixie Inn they bought some alcoholic refreshments and, around midnight, arrived at a "swimming hole" located in an abandoned gravel pit in a remote location on property owned by James Walter Frazier, defendant herein.

James Edward Harlan was seriously injured while diving into the water-filled gravel pit. Harlan, along with his mother, Linda Costello, now seek to recover $17,750,000 from the landowner and his insurers for injuries stemming from the diving accident. Their cause of action is based on the strict liability provisions found in Louisiana Civil Code Article 2317. The defendants move for summary judgment on grounds that the defendant landowner is immune from liability under La.R.S. 9:2791 and 2795. Opposing the motion, plaintiffs assert that these statutes are not applicable and, if applicable, are constitutionally invalid under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and similar provisions of the Louisiana Constitution. For reasons here stated, the motion for summary judgment on behalf of defendants is granted and the application of La.R.S. 9:2971 and 2975 is found to be constitutionally valid.

## FACTUAL BACKGROUND

James Walter Frazier, Jr. owns approximately 1100 acres in Webster Parish, Louisiana, 200 of which are currently used as a cattle ranch and homestead. The remaining 900 acre tract is unimproved timberland which has been harvested from time to time over the years. In the southwest portion of the 1100 acre area, there are several gravel pits which were created as a result of gravel mining prior to 1971. In mining the gravel, several deep troughs or pits were excavated and a huge sand dump west of the pit area was formed, rising 30 to 50 feet high and covering several hundred feet square. In the years since excavation, the gravel pits have become filled with water, and range in depth from very shallow near the sides to 7 to 12 feet in the deepest parts.

The 1100 acre tract owned by Frazier is bordered on the east in part by Highway 7 and on the south by property facing Parish Road No. 153, commonly known as the "Salt Works Road." An unimproved farm road intersecting Hwy 7 permits access to the gravel pit area, but this road is privately used and can be traversed only by tractors, all-terrain vehicles, and by trucks when the weather is dry. The secondary access to the gravel pit area is a network of unimproved roads which enter the defendant's property approximately 1 mile south of the gravel pits. These roads do not permit immediate access to the gravel pits, stopping several hundred feet short of the gravel pit area and requiring persons entering the area to cross the sand dump by foot or by use of all-terrain vehicles.

Approximately 200 acres in the north end of the 1100 acre tract were previously used as a golf course. At the time of the accident, Frazier used a small portion of this area for his home and the rest for grazing cattle. In 1984, Frazier unsuccessfully attempted to use 30 acres near the center of the premises, approximately ½ mile from the gravel pit, as a Christmas tree farm. The remaining portion of the tract has not been used commercially. Frazier has granted gratuitous hunting rights on the

tract to a limited number of individuals. This area consists of forest land which changes into swamp where the tract borders Lake Bistineau on the west. To repeat, approximately 850 acres of the Frazier lands are not used commercially, but are subject to a gratuitous verbal lease permitting the forest area to be used for hunting.

Unknown to the landowner, James Harlan and others entered his lands on the night of June 17, 1983 and used one of the gravel pits for diving and swimming. Also unknown to Frazier, and unauthorized by him, the gravel pit area had been used previously for outdoor recreation, as evidenced by various makeshift equipment in and around the pit area, such as a floating platform, a diving board and barbeque pits. Also there was a volley ball net and a wire cable which was stretched from a tree on the bank of the pit to the side of the diving board permitting alternative means to descend into the water. The 17 photographs attached to the summary judgment motion give an excellent (daytime) view of the pond and surrounding areas and enhance understanding of the facts. During the course of the evening Harlan was observed to dive from the board, executing flips and other dives. Although he was warned by Megehee against diving from the bank away from the board, he was seen doing so, and in one dive he hit the stretched cable (without apparent injury). In his deposition (beginning at page 27) Jim Megehee describes the situation when Harlan was injured. Billy Thomas hollered that he needed help to get Harlan out of the water. No one saw the event which caused Harlan to be face down "bobbing in the water". The specific cause is not known to Harlan, either. (See Harlan deposition at page 27). After he was removed from the pond he was carried to the pickup, taken back across the sand dune, put in the car and was taken back to Minden. Whatever the cause, the accident ultimately rendered him a partial quadraplegic. Seeking to recover damages for his injuries, Harlan instituted this diversity action.

## LANDOWNER LIABILITY

The landowner and his insurers move to dismiss, support their motion with matters outside the pleadings, and properly characterize their motion as one for summary judgment. Summary judgment shall be rendered on the defendants' motion if their submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. In considering the motion, all reasonable inferences from facts adduced by the movant must be considered in favor of the party opposing the motion. *Hall v. Diamond M. Co.*, 732 F.2d 1246, 1249 (5th Cir.1984). Any doubt must be resolved against the moving party. *Murphy v. Georgia-Pacific Corp.*, 628 F.2d 862, 866 (5th Cir.1980). In this case, therefore, the defendants must show that uncontroverted facts support their conclusion that the landowner is not financially responsible for injuries sustained by Harlan.

Maintaining that they are entitled to judgment as a matter of law, the defendants rely upon La.R.S. 9:2791 and 2795. The first of these statutes provides:

A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.

B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create

any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.

C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.

La.R.S. 9:2791. Section 2795 provides:

A. As used in this Section:

(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.

(4) "Charge" means the admission price or fee asked in return for permission to use lands.

(5) "Person" means individuals regardless of age.

B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:

(1) Extend any assurance that the premises are safe for any purposes.

(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Incur liability for any injury to person or property incurred by such person.

C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.

D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequences of failure to employ such care.

The scope of these statutes has been examined by Louisiana courts on a limited number of occasions. In *Keelan v. State, Department of Culture, Recreation and Tourism,* 463 So.2d 1287 (La.1985), the court considered whether these statutes confer immunity from liability for the death of a drowning victim at a swimming pool in the Fountainbleu State Park in St. Tammany Parish. Finding that the purpose of La.R.S. 9:2795 is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability", the court reviewed the essential elements to a claim of immunity. 463 So.2d at 1290. First, the characteristics of the property—size, naturalness, and remoteness or insulation from populated areas—are considered to determine whether the property is rural or semi-rural and, therefore, whether its use promotes the legislative purpose. Where the property can be characterized as open, natural and undeveloped, thereby tending to accommodate recreational activities enumerated in the statutes, limited liability of the landowner promotes unimpeded use of those lands by third persons. Second, the court examines the injury-causing condition or instrumentality to determine whether the property is used as that normally encountered in the "true out-

doors." *Id.* Although the statute expressly incorporates "swimming" as a recreational activity within La.R.S. 9:2795, *Keelan* found that the injury-causing instrumentality, a swimming pool, to be one usually found in someone's backyard and beyond the scope of the landowner liability statutes. Although "the legislature intended to grant immunity for injuries incurred while swimming in lakes, rivers, ponds or other similar bodies of water," an injury occurring in a swimming pool was not subject to the defense of immunity. 463 So.2d at 1291.

The scope of the landowner immunity statutes was later considered in a case with facts very similar to those presented by Harlan. In *Lacroix v. State, Department of Transportation,* 477 So.2d 1246 (La. App. 3d Cir.1985), a 14-year old was injured when she dove into a creek from a concrete culvert constructed by the State of Louisiana. The plaintiff dove into a murky pool of water approximately 4 feet deep and struck her head against an underwater concrete piling which projected out of the sand near the culvert. As a result, Lacroix was rendered a partial quadrapelgic, losing substantial mobility in her legs and arms.

Relying upon *Keelan,* the Louisiana Court of Appeals for the Third Circuit found that the plaintiff's claim involved a recreational accident occurring in a rural setting. 477 So.2d at 1250. "Because of this site's popularity, we believe it warrants being termed as a recreational area. Members of the general public swam in this creek without charge. Admittedly, the State did not invite individuals to swim at this site and considered individuals who did as trespassers. However in our view, this fact does not preclude the State from enjoying the benefit of the immunity provided by La.R.S. 9:2791 and 2795." *Id.* After finding that the property was used as a recreational area, the court found that the injury-causing condition was one which would be normally encountered in the "true outdoors." *Id.* As the small creek was used by members of the general public for swimming, the immunity statutes foreclosed liability of the State.

■ As in *Lacroix,* James Harlan entered and used the defendant's property in a manner contemplated by the immunity statutes. First, the accident site is remotely located, requiring passage on unimproved roads and movement by foot or all-terrain vehicle. Although the landowner did not invite Harlan and his friends to use this area, La.R.S. 9:2791 does not, as an essential element, require that the landowner invite or consent to entry of third persons. Rather, the title of Acts 1964, No. 248, provides that the landowner is immune under restricted conditions from liability to third persons who may be on his premises *with or without* his permission. Second, the equipment placed on Frazier's property by third persons shows that the gravel pit was used as a recreational area. Additionally, the swimming area is not that ordinarily found in someone's backyard, but a body of water similar to the "lake, river, or pond" referenced by the Louisiana Supreme Court in *Keelan.* 463 So.2d at 1291. Considering that the gravel pits are remote from populated areas and have remained in their natural state for longer than 12 years, and that the injury-causing instrumentality is one found in the true outdoors, the landowner must be shielded from liability.

The plaintiffs attempted distinctions do not support their conclusion that the immunity statutes are not applicable. First, the plaintiffs' argument that the property has historically been subject to continuing development, with the gravel pit area being developed beyond its natural state and, therefore, beyond the scope of the immunity statutes, is without merit. The uncontroverted facts show that commercial gravel production ceased prior to 1971 and that the gravel pit area has not been otherwise used since that time. The pit area is in a remote area within Frazier's 850 acres of forest lands, can be reached only by foot or all-terrain vehicle, and exists, without attention or activity of the landowner, as an area precisely as envisioned by the express words of the *Keelan* court.

Furthermore, the second proposed distinction, that the instrumentalities and activities contributing to the injury are clearly distinguished from those in *Lacroix*, is also inapposite. Although additional equipment may be brought onto rural property by third parties, that additional equipment does not change the character of the property. In *Keelan*, the court was quite specific on this point: "The existence of some improvements of relatively undeveloped rural or semi-rural property does not change the character of the land so as to deprive its owner of the immunity granted by the statutes. Improvements such as shelters, toilet facilities, fireplaces, etc. are merely conveniences incidental to the use of the land for enumerated recreational activities and do not of themselves take property out of a rural, undeveloped classification." 463 So.2d at 1290. Considering the nature of the additional equipment, its apparent uses, and its location in relation to "travelled" roads, the proposed distinctions offered by plaintiffs are not found to be persuasive.

The requirements of Fed.R.Civ.P. 56(c) have been met. The pleadings, depositions, affidavits, photographs and briefs have carefully been studied. Louisiana cases in point have been read and reread. There is no genuine issue as to any material fact. The injury undoubtedly occurred on defendant's land. The pond in the gravel pit was unquestionably in a rural area and was gratuitously used for recreational purposes.

It is unquestioned that Harlan sustained serious injury, but not all instances of injury automatically lead to an award of damages. Not all accidents are the legal fault of another. The ancient language of the law, *damnum absque injuria*, applies to the facts presented. In obedience to *Erie*, this court must apply the law as a judge of a Louisiana court would be required to do. The result here is what the Louisiana legislature provided when the landowner immunity statutes were adopted. Accordingly, the motion to dismiss must be GRANTED.

**CONSTITUTIONAL VALIDITY**

Plaintiffs argue that if La.R.S. 9:2791 is found to be applicable, such application infringes their rights to equal protection and due process of law in violation of the Fourteenth Amendment to the United States Constitution and analogous provisions of the Louisiana Constitution. Specifically, plaintiffs assert that these statutes create a class of tort victims who are injured while making non-commercial recreational use of property, completely denying that class any remedy for injuries sustained during the proscribed use. This classification allegedly constitutes "disparate treatment having grounds of differentiation which have no fair and substantial relationship to the legislative objective." Plaintiffs' Opposition to Motion for Summary Judgment, Page 15. Furthermore, the immunity statutes' complete bar to recovery is allegedly suspect under Article 1, § 22 of the Louisiana State Constitution.

a. Equal Protection

The appropriate analysis for considering the constitutional validity of the Louisiana statute on equal protection grounds is found in *Sibley v. Board of Supervisors of Louisiana*, 477 So.2d 1094 (La.1985). The framework starts with Article 1, § 3 of the 1974 Louisiana Constitution, the Declaration of Right to Individual Dignity, which provides:

> No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

Interpreting this provision, the *Sibley* court found three classifications subject to review: (1) when the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) when the stat-

ute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) when the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley,* 477 So.2d at 1107–8 (Citations Omitted).

■ In this case, the claimed class distinction is based upon the location and nature of the tort victim's conduct when the injury occurs. This is not a classification based on race or religion, nor is it a classification based on birth, sex, culture, physical condition or political ideas. Rather, this case falls into the third class defined by Article 1, § 3, and *Sibley,* requiring members of the disadvantaged class to show that the statute does not suitably further an appropriate state interest. As previously ruled, Harlan falls within this class and, accordingly, he must show that the statute does not promote the defined state interest.

Harlan has failed to meet this burden. As previously noted, the purpose of the landowner immunity statutes is to promote the non-commercial recreational use of rural property. As applied, La.R.S. 9:2791 protects the landowner where others use his rural properties for their personal enjoyment. This immunity is confined to a limited, defined group of activities on a very specific type of property, these restrictions ensuring strict adherence to the express legislative purpose. Although plaintiff contends that the statute creates an absolute prohibition of recovery against the landowner, the statute is specifically limited to nonintentional acts. Where the landowner acts deliberately and willfully or maliciously to injure another, the immunity does not apply. Furthermore, where the premises are used for commercial gain to the landowner, the immunity cannot apply. Rather, only where the property is rural or semi-rural in nature and the injury-causing

instrumentality is one found within the "true outdoors", then and only then does the statute apply. In this context, it is beyond doubt the statute suitably furthers an appropriate state interest.

■ Plaintiffs also assert that the immunity statutes deny equal protection of the laws under the Fourteenth Amendment. Where a statute proscribes fundamental rights, it must be subjected to strict scrutiny and will be sustained only if it is suitably tailored to serve a compelling state interest. *McLaughlin v. Florida,* 379 U.S. 184, 192, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). It is beyond doubt that no fundamental right, as interpreted by the United States Supreme Court, is subject to violation in this case. Alternatively, where the classification is based upon gender, legitimacy or, perhaps, age, then the statute will survive equal protection scrutiny only if it is substantially related to an important state interest. *Cleburne v. Cleburne Living Center,* — U.S. —, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Again, the second level or tier of scrutiny is not applicable to this case. Rather, the statute subject to review involves social legislation, is presumed to be valid and must be sustained if the classification is rationally related to a legitimate state purpose. *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976).

The landowner immunity statutes meet this standard. As previously stated, the statutes are directed toward the achievement of a legitimate state goal—to promote the unimpeded use of natural rural lands by non-owners. Additionally, the statutes further this goal within acceptable bounds, while simultaneously protecting the public from intentional acts of all landowners and the negligent acts of others under given conditions. Again, without question, this legislation is rationally related to a legitimate state purpose. Accordingly, the statutes do not infringe the plain-

tiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

### b. Due Process

 Plaintiffs argue that La.R.S. 9:2791 and 2795 are suspect under Article 1, § 22 of the Louisiana State Constitution because they act as complete bars to recovery. That section of Louisiana Constitution provides:

> All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to his person, property, reputation, or other rights.

As cited by plaintiffs, "the legislature is free to allocate access to the judicial machinery or any system or classification which is not totally arbitrary [where access to the judicial process is not essential to the exercise of a fundamental constitutional right]." *Bazley v. Tortorich,* 397 So.2d 475, 485 (1981). This action does not raise the spectre of a fundamental right. Rather, the immunity statutes consist of social legislation with limited scope. Within well-defined and strictly construed confines, the Louisiana legislature extends protection to landowners for injuries occurring on their lands. Clearly, landowner immunity, within prescribed bounds, is not "totally arbitrary" and does not encroach upon the plaintiffs' constitutionally protected rights.

The United States District Court is open to these plaintiffs. They filed their complaint without let or hinderance. Due process of law has been administered without partiality or unreasonable delay. But due process works both ways. Under the facts here presented the landowner is shielded from liability by specific statutory enactment and this *Erie*-bound court must recognize and apply that law. Such application comports with the Louisiana Constitution.

Accordingly, the landowners immunity statute, as applied to the facts of this case, is not constitutionally invalid.