2000 ND 111

**Lillian Maria DICKIE and John Dickie, Plaintiffs,**

v.

**FARMERS UNION OIL COMPANY OF LaMOURE; Vining Oil & Gas Company, Defendants.**

No. 990389.

Supreme Court of North Dakota.

May 25, 2000.

Tyrone Patrick Bujold, Minneapolis, MN, for plaintiffs.

John V. McCoy (moved for admission by Lawrence R. Klemin), Bode, Carroll, McCoy, Hoefle & Mihal, Waukesha, WI, and Carlton J. Hunke (appeared), Fargo, for defendants.

NEUMANN, Justice.

[¶ 1] Invoking N.D.R.App.P. 47, the United States District Court, Southeastern Division for the District of North Dakota, certified the following question of law to this Court:

> Is N.D. Cent.Code § 28–01.3–08, the North Dakota Product Liability Act Statute of Repose, unconstitutional under Article I, § 21 of the North Dakota Constitution because it denies to the plaintiffs in this action equal protection of the law?

Our answer is that N.D.C.C. § 28–01.3–08 creates an unconstitutional classification in violation of N.D. Const. art. I, § 21.

## I

[¶ 2] A statement of facts relevant to this question is supplied by the Federal District Court order. On August 5, 1998, Lillian Maria Dickie, while employed by Peter Schockman on the Schockman farm, sustained serious burn injuries from an explosion and fire attributed to a gas leak through an underground pipe which connected gas storage tanks to an LP gas-fired grain dryer. On October 6, 1975, LaMoure Farmers Union Oil Company ("Farmers") sold and delivered black iron pipe to Orville Schockman, Peter Schockman's father. Farmers installed the pipe beneath the ground on the Schockman farm, connecting one storage tank to a grain dryer. Lillian Dickie and her husband, John Dickie, claim that when the pipe was installed by employees of Farmers it was not protected against corrosion and was, therefore, in violation of the National Fire Protection Association codes. After the August 5, 1998 explosion and fire, the pipe was exhumed and examined. A leak was found in the pipe. The Dickies claim corrosion caused the leak.

[¶ 3] The Dickies commenced a products liability action against Farmers, seeking damages for injuries caused by the explosion. Farmers asserted the Dickies' claims are barred by the statute of repose under N.D.C.C. § 28–01.3–08. The Federal District Court, recognizing this Court had declared a prior version of a similar statute of repose unconstitutional, certified the foregoing question of law to this Court.

## II

[¶ 4] Section 28–01.3–08, N.D.C.C., as enacted by the legislature in 1995, provides in relevant part:

*28–01.3–08. Statute of limitation and repose.*

1. Except as provided in subsections 4 and 5, there may be no recovery of damages in a products liability action unless the injury, death, or property damage occurs within ten years of the date of initial purchase for use or consumption, or within eleven years of the date of manufacture of a product.

[¶ 5] This Court, in *Hanson v. Williams County*, 389 N.W.2d 319, 328 (N.D.1986), declared unconstitutional a substantively identical statute of repose, enacted by the 1979 legislature and codified at N.D.C.C. § 28–01.1–02.[1] In *Hanson* we applied an equal protection analysis to the 1979 statute of repose and determined it involved important substantive rights requiring an intermediate standard of review:

> A statute of repose period begins to run from the occurrence of some event other than the event of an injury that gives rise to a cause of action and, therefore, bars a cause of action before the injury occurs. A person injured after the statutory period of repose is left without a remedy for the injury.

*Id.* at 321.

> While there are economic consequences for manufacturers and their insurers underlying the legislation in question, we believe our focus must be on the individuals affected. We are unwilling to view human life and safety as simply a matter of economics.... [T]he right to recover for personal injuries is an important substantive right. We conclude that the appropriate standard of review to be applied in the present case is the intermediate standard or the close correspondence test.

*Id.* at 325 (citation omitted).

The question, therefore, is whether or not there is such a close correspondence between this statutory classification and the legislative goals as would justify this classification.

*Id.* at 327. In performing the equal protection analysis in *Hanson*, this Court expressed its concern about statutes "which arbitrarily deny one class of persons important substantive rights to life and safety which are available to other persons." *Id.* at 328. This Court stated the legislature had failed to advance a basis for selecting the period of years for bar or repose other than the economic interests of the manufacturers and suppliers and concluded there was no close correspondence between the legislative goals and the classification created by the statute to withstand the equal protection challenge. *Id.*

[¶ 6] While conceding the 1979 and 1995 legislation is substantively identical, Farmers argues the 1995 legislature demonstrated a close correspondence between the goals sought and the legislative classification allowing personal injury actions by persons injured within, but not beyond, 10 years of the date of initial purchase or 11 years of the date of manufacture of a product. The legislative intent for adopting the 1995 statute of repose is expressed, in relevant part, under N.D.C.C. § 28–01.3–07(2) and (3):

2. In recent years it has become increasingly evident that there are still serious problems with the current civil justice system. As a result, there is an urgent need for additional legislation to establish clear and predictable rules with respect to certain matters relating to products liability actions.

3. The purpose of sections 28–01.3–08 and 28–01.3–09 is to clarify and improve the method of determining responsibility for the payment of dam-

---

1. The parties concede the 1979 statute of repose under N.D.C.C. § 28–01.1–02 and the current statute of repose under N.D.C.C. § 28–01.3–08 are identical in substance. Both enactments bar products liability actions which are not brought within 10 years of the date of initial purchase of a product for use or consumption, or within 11 years of the date of its manufacture.

ages in products liability litigation; to restore balance and predictability between the consumer and the manufacturer or seller in product liability litigation; to bring about a more fair and equitable resolution of controversies in products liability litigation; to reenact a statute of repose to provide a reasonable period of time for the commencement of products liability litigation after a manufacturer or seller has parted with possession of its product; to address problems that have been created by judicial interpretation of our previous enactments; to enact, with minor changes, several provisions of former chapter 28–01.1; and to simplify and provide an increased degree of certainty and predictability to our products liability laws.

Farmers argues the 1979 statute of repose was enacted to reduce products liability insurance costs, but the 1995 legislation was primarily enacted to provide a reasonable period of time for commencement of products liability litigation and thereby establish a needed degree of certainty and predictability in the law.

[¶ 7] The same legislative objective of providing a reasonable period of time and certainty within which to bring products liability litigation was recognized as a primary objective of the 1979 statute of repose which this Court declared unconstitutional. In *Hanson*, 389 N.W.2d at 327, we stated:

> The rationale of products liability statutes of repose are threefold:
>
> ... "The third rationale is that persons ought to be allowed, as a matter of policy, to plan their affairs with a reasonable degree of certainty." Department of Commerce, Model Uniform Products Liability Act, Analysis § 110(B)(1), 44 Fed.Reg. 62,713, 62,734 (1979).

It is the third rationale which "goes to the heart of the product liability rate-setting problem", 44 Fed.Reg. at 62,734, and which appears to have motivated the passage of the North Dakota Products Liability Act.

This Court concluded there was no showing how an absolute bar to products liability actions after 10 years from the date of initial purchase or 11 years from the date of manufacture of a product constituted a close correspondence to the legislative goal of providing certainty in litigation or of reducing insurance costs.

[¶ 8] The 1995 statute of repose, like the 1979 law, may nullify some causes of action for injuries caused by defective products before the injuries are even incurred. Regarding our legislature's failure to demonstrate a close correspondence between the objective and the classification, Justice Beryl Levine, in her concurring opinion in *Hanson*, 389 N.W.2d at 329, stated:

> No one ... was able to present data that established a close correspondence between eliminating claims for relief of persons injured by products after ten years from sale, and controlling the rising premiums for products liability insurance....
>
> If we do not understand the causes of a problem, even conceding that a problem exists, I do not believe that legislation, which destroys the important substantive rights of a class of persons whose misfortune it was to be injured by a product over ten years old satisfies equal protection. There can be no close correspondence between a statutory classification such as we have here and a legislative objective when that objective is grounded on guesswork, frustration, and little more than a wing and a prayer.

[¶ 9] We have carefully reviewed the legislative history of the 1995 enactment of N.D.C.C. § 28–01.3–08 and we find no more supportive evidence demonstrating a close correspondence between the stated legislative objectives and the classification created by the 1995 statute of repose than existed in the 1979 enactment of its prede-

cessor. There is simply no showing within the testimony or data submitted in consideration of the 1995 legislation that litigation brought by victims injured more than 10 years from the initial date of purchase of a product or 11 years from its manufacture, as compared to persons injured within those time periods, has caused inequity, unfairness, or unreasonable exposure and unpredictability for manufacturers or suppliers in civil litigation. There is simply no demonstration by the testimony or evidence submitted to the legislature which shows harm or prejudice to sellers and manufacturers resulting from damage awards against them for injuries incurred more than 10 years from initial purchase or 11 years from manufacture of defective products. We, therefore, hold there is not a close correspondence between the legislative objectives under N.D.C.C. § 28–01.3–08 and the classification created thereunder to withstand an equal protection challenge under N.D. Const. art. I, § 21.

[¶ 10] Farmers asserts that this Court's analysis upholding a statute of repose in *Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733 (N.D.1988), is applicable to this case and supports a conclusion that N.D.C.C. § 28–01.3–08 is constitutional. We disagree. In *Bellemare*, 420 N.W.2d at 738, we concluded the statute of repose under N.D.C.C. § 28–01–44, limiting personal injury actions arising out of deficient improvements to real property, did not violate N.D. Const. art. I, § 21. In reaching that conclusion, this Court recognized a crucial distinction between the classification of potential defendants protected under N.D.C.C. § 28–01–44, who are involved in the planning, design, and construction of improvements to real property, and the classification of potential defendants protected under N.D.C.C. § 28–01.3–08, who are the manufacturers and suppliers of products:

> Bellemare also contends that § 28–01–44, N.D.C.C., unconstitutionally classifies potential defendants by extending protection to persons who furnish the design, planning, supervision or construction of an improvement and failing to extend protection to owners or material suppliers.... Differences exist between the different classes of potential defendants:
>
> ... "Architects, contractors, engineers, and inspectors ... in most cases do not have continuing control over or involvement with the maintenance of the improvement after its initial construction.
>
> ... "[M]aterialmen are in a position distinct from the architect, contractor, engineer, or inspector in that the materialman provides manufactured goods and should be held accountable under the general tort rules governing liability for defects in those products....
>
> > " 'Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factor[y]. On the other hand, the architect or contractor can pretest and standardize construction designs and plans only in a limited fashion.' "

*Bellemare*, 420 N.W.2d at 738. *See also Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822, 827 (Colo.1982).

[¶ 11] In *Vantage, Inc. v. Carrier Corp.*, 467 N.W.2d 446, 450 (N.D.1991), we again recognized a relevant distinction between materialmen and persons designing or constructing improvements to real property, and we reconfirmed our decision in *Hanson* that the statute of repose under N.D.C.C. § 28–01.1–02, limiting actions for defective products against manufacturers and suppliers of goods, violated N.D. Const. art. I, § 21.

[¶ 12] We are unpersuaded by Farmers' argument that our analysis in *Bellemare* is applicable to this case. In the present

enactment of the statute of repose under N.D.C.C. § 28–01.3–08, there is once again no evidence demonstrating a close correspondence between the legislative goals and the classification which bars claims for damages caused by defective products after 10 years from the initial date of their purchase or 11 years from the date of their manufacture, irrespective of whether the injury is incurred within or beyond the period of repose.

### III

[¶ 13] The rule of stare decisis is grounded upon the theory that when a legal principle is accepted and established rights may accrue under it, security and certainty require that the principle be recognized and followed thereafter. *Otter Tail Power Co. v. Von Bank,* 72 N.D. 497, 8 N.W.2d 599, 607 (1942). Whether the previous holding shall be adhered to is within the court's discretion under the circumstances of the case before it. *Id.* Although we sometimes overrule controlling precedent, we are guided by principles of stare decisis and are unwilling to overturn our decision in *Hanson* to now uphold the reenactment of a statute of repose substantially similar to the one found unconstitutional therein. We reiterate what we said in *Hanson,* 389 N.W.2d at 328, "when we are dealing with human life and safety we believe that more is required for a justification than a reference to the economics of suppliers of goods. Some rational basis must be advanced for the selection of the period of years for 'bar' or 'repose,' other than the economic interests of manufacturers or suppliers." We conclude there is not sufficient evidence or findings to demonstrate a close correspondence between the legislative goals and the classification created by the 1995 statute. We, therefore, hold N.D.C.C. § 28–01.3–08 creates an unconstitutional classification in violation of N.D. Const. art. I, § 21.

[¶ 14] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DALE V. SANDSTROM, JJ., concur.

[¶ 15] CAROL RONNING KAPSNER, J., disqualified herself subsequent to oral argument and did not participate in this decision.