2002 ND 61

**Kathleen A. OLSON and Amy Howard, Plaintiffs and Appellants,**

**v.**

**BISMARCK PARKS AND RECRE- ATION DISTRICT, Defendant and Appellee.**

**No. 20010249.**

Supreme Court of North Dakota.

April 16, 2002.

Orell D. Schmitz, Schmitz, Moench & Schmidt, Bismarck, for plaintiffs and appellants.

Ronald F. Fischer, Pearson Christensen, Grand Forks, for defendant and appellee.

Douglas A. Bahr (on brief), Solicitor General and Reid Alan Brady (on brief), Assistant Attorney General, Attorney General's Office, Bismarck, for amicus curiae.

KAPSNER, Justice.

[¶ 1]   Kathleen A. Olson and Amy Howard appealed from a summary judgment dismissing their negligence action against the Bismarck Parks and Recreation District ("District") because the District was immune from suit.  We conclude, under the circumstances of this case, the limited liability afforded the District for recreational use of property under N.D.C.C. ch. 53–08 does not violate the equal protection provisions of N.D. Const. art. 1, § 21, and we affirm.

I

[¶ 2]   On November 26, 2000, Olson and Howard were seriously injured while sledding on a hill at Bismarck's Tom O'Leary golf course, which is owned, operated, and maintained by the District.  During the winter, about 100 acres of the Tom O'Leary Recreational Complex are open free of charge to the general public for sledding, snowboarding, tobogganing and

cross-country skiing. The hill has not been altered from its natural state and is not groomed or maintained for sledding. Signs posted at the top of the hill cautioned people, "SLIDE AT YOUR OWN RISK," "NOT RESPONSIBLE FOR ACCIDENTS," "INJURY MAY RESULT FROM HIGH SPEEDS," and "USE EXTREME CAUTION."

[¶ 3]   Olson and Howard sued the District, claiming it negligently failed to maintain the sledding area in a safe and hazard-free condition for its users. The District contended the lawsuit was barred by the recreational use immunity statutes, N.D.C.C. ch. 53–08. Olson and Howard moved for partial summary judgment declaring the recreational use immunity statutes unconstitutional as violative of their equal protection rights. The District also moved for summary judgment requesting the court to dismiss the lawsuit based on the recreational use immunity statutes. The trial court concluded the recreational use immunity statutes are constitutional, granted the District's motion for summary judgment, and dismissed the lawsuit. Olson and Howard appealed.

## II

[¶ 4]   Summary judgment is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or resolving the factual disputes will not alter the result. *Anderson v. Meyer Broadcasting Co.*, 2001 ND 125, ¶ 14, 630 N.W.2d 46. Whether a statute is constitutional presents a question of law which is fully reviewable on appeal. *State v. Burr*, 1999 ND 143, ¶ 9, 598 N.W.2d 147.

## A

[¶ 5]   The relevant provisions of N.D.C.C. ch. 53–08 state:

> Subject to the provisions of section 53–08–05, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

N.D.C.C. § 53–08–02.

> Subject to the provisions of section 53–08–05, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:
> 1. Extend any assurance that the premises are safe for any purpose;
> 2. Confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed; or
> 3. Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

N.D.C.C. § 53–08–03.

> Nothing in this chapter limits in any way any liability which otherwise exists for:
> 1. Willful and malicious failure to guard or warn against a dangerous condition, use, structure, or activity; or
> 2. Injury suffered in any case when the owner of land charges the person or persons who enter or go on the land other than the amount, if any, paid to the owner of the land by the state.

N.D.C.C. § 53–08–05.

> In this chapter, unless the context or subject matter otherwise requires:

1. "Charge" means the amount of money asked in return for an invitation to enter or go upon the land.

2. "Land" includes all public and private land, roads, water, watercourses, and ways and buildings, structures, and machinery or equipment thereon.

3. "Owner" includes tenant, lessee, occupant, or person in control of the premises.

4. "Recreational purposes" includes any activity engaged in for the purpose of exercise, relaxation, pleasure, or education.

N.D.C.C. § 53–08–01.

[¶ 6] Almost all states have statutes that limit a landowner's liability for personal injury suffered by a person using the land recreationally. Robin C. Miller, Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User*, 47 A.L.R.4th 262 (1986). Generally, the statutes are "intended to reduce the growing tendency of landowners to withdraw land from recreational access by removing the risk of gratuitous tort liability that a landowner might run unless he could successfully bar any entry to his property for enumerated recreational uses." 62 Am.Jur.2d *Premises Liability* § 119 (1990) (footnote omitted). The recreational use immunity statutes were first enacted in North Dakota in 1965, and were also intended to "encourage landowners to make available to the public, land and water areas and other property for recreational purposes by limiting their liability toward users." 1965 N.D. Sess. Laws ch. 337.

[¶ 7] This Court has previously construed the recreational use immunity statutes. In *Stokka v. Cass County Elec. Coop., Inc.*, 373 N.W.2d 911, 915–16 (N.D. 1985), this Court upheld the constitutionality of the provisions of N.D.C.C. ch. 53–08

in effect at that time as applied to a private landowner, but ruled there was a genuine issue of material fact whether the landowner was "[w]illful or malicious" in failing to guard or warn against a dangerous condition, rendering improper a summary judgment dismissing the plaintiff's personal injury action. In *Fastow v. Burleigh County Water Res. Dist.*, 415 N.W.2d 505, 508–09 (N.D.1987), this Court relied on *Umpleby v. United States*, 806 F.2d 812 (8th Cir.1986), in concluding the protection of the recreational use immunity statutes applied to political subdivisions, but held the political subdivision in that case had waived immunity by purchasing liability insurance.

[¶ 8] In 1993, the Legislature first amended the statutes by changing the language of N.D.C.C. § 53–08–05(1) from "[w]illful or malicious" to "[w]illful and malicious." 1993 N.D. Sess. Laws ch. 503, § 1. After this Court abrogated sovereign immunity in *Bulman v. Hulstrand Const. Co., Inc.*, 521 N.W.2d 632 (N.D.1994), the Legislature again amended the statutes. In 1995, the Legislature changed the definition of "[l]and" in N.D.C.C. § 53–08–01 to include "all public and private land," and amended the definition of "[r]ecreational purposes" to its present form. 1995 N.D. Sess. Laws ch. 162, § 7. The amendment to the definition of land was intended to clarify that the statutes provide "a limitation of liability for all landowners, regardless of whether they are private or public." *Hearing on S.B. 2127 Before the Senate Agriculture Comm.*, 54th N.D. Legis. Sess. (Jan. 5, 1995) (testimony of Robert Olheiser, State Land Commissioner). In *Hovland v. City of Grand Forks*, 1997 ND 95, ¶¶ 8, 17, 563 N.W.2d 384, a majority of this Court ruled the *Fastow* court's discussion of N.D.C.C. ch. 53–08 and political subdivisions was "dictum," and ruled the pre–1995 version of the recreational use

immunity statutes did not apply to political subdivisions. The present case is the first time we have been squarely confronted with a challenge to the constitutionality of the statutes as amended in 1995 and applied to a public landowner.

### B

[¶ 9] Olson and Howard argue N.D.C.C. ch. 53–08 violates our state equal protection guarantee, N.D. Const. art. I, § 21, which provides:

No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens.

[¶ 10] A facially neutral statute may violate equal protection in its application or effect. *State v. Wilt*, 371 N.W.2d 159, 160 (N.D. 1985); *State v. Mathisen*, 356 N.W.2d 129, 133 (N.D.1984). Generally, a party may only challenge the constitutionality of a statute as applied to that party. *State v. Dvorak*, 2000 ND 6, ¶ 28, 604 N.W.2d 445; *Tooz v. State*, 76 N.D. 599, 607, 38 N.W.2d 285, 290 (1949). Consequently, when addressing equal protection challenges to legislation, we have often noted a person to whom a statute constitutionally may be applied cannot challenge the statute on the ground that it might conceivably be applied unconstitutionally to others. *First Bank of Buffalo v. Conrad*, 350 N.W.2d 580, 584 (N.D.1984); *State v. Morris*, 331 N.W.2d 48, 58 (N.D.1983); *State v. Unterseher*, 255 N.W.2d 882, 886 (N.D.1977); *State v. Amerada Petroleum Corp.*, 71 N.W.2d 675, 680 (N.D.1955); *Benson v. Schneider*, 68 N.W.2d 665, 670 (N.D.1955); *Asbury Hosp. v. Cass County*, 72 N.D. 359, 392, 7 N.W.2d 438, 456 (1943).

[¶ 11] All regularly enacted statutes carry a strong presumption of constitutionality, which is conclusive unless the party challenging the statute clearly demonstrates that it contravenes the state or federal constitution. *In re M.D.*, 1999 ND 160, ¶ 25, 598 N.W.2d 799. When a statute is challenged on equal protection grounds and an important substantive right is involved, we apply an intermediate standard of review which requires a close correspondence between the statutory classification and the legislative goal. *Gange v. Clerk of Burleigh County Dist. Court*, 429 N.W.2d 429, 433 (N.D.1988). The right to recover for personal injuries is an important substantive right. *Dickie v. Farmers Union Oil Co. of LaMoure*, 2000 ND 111, ¶ 5, 611 N.W.2d 168; *Bouchard v. Johnson*, 555 N.W.2d 81, 87 (N.D. 1996); *Hanson v. Williams County*, 389 N.W.2d 319, 325 (N.D.1986). Therefore, the inquiry in this case is whether there is a close correspondence between the statutory classification and the legislative goal. We may consider unarticulated legislative purposes or goals in an equal protection analysis of a statutory classification. *Haney v. North Dakota Workers Comp. Bureau*, 518 N.W.2d 195, 202 (N.D.1994); *State v. Knoefler*, 325 N.W.2d 192, 195 (N.D.1982).

### C

[¶ 12] Olson and Howard have not cited, nor have we found, any caselaw striking down as unconstitutional similar recreational use immunity statutes. Rather, courts have uniformly rejected a variety of constitutional attacks against such legislation. *See, e.g., Mattice v. United States, Dep't of Interior*, 969 F.2d 818, 822 (9th Cir.1992) (holding California statutes did not violate equal protection when applied to public landowner); *Simpson v. United States*, 652 F.2d 831, 833–34 (9th Cir.1981) (holding same); *Harlan v. Frazier*, 635 F.Supp. 718, 724 (W.D.La.1986),

*aff'd* 811 F.2d 601 (5th Cir.1987) (holding Louisiana statutes did not violate equal protection when applied to private landowner); *Dickey v. City of Flagstaff,* 197 Ariz. 422, 4 P.3d 965, 972–73 (1999) (holding Arizona statutes did not violate state constitutional right-of-action provision when applied to public landowner); *Corey v. State,* 108 Idaho 921, 703 P.2d 685, 687 (1985) (holding Idaho statutes did not violate due process when applied to public landowner); *Johnson v. Sunshine Mining Co., Inc.,* 106 Idaho 866, 684 P.2d 268, 271–73 (1984) (holding Idaho statutes did not violate equal protection or due process when applied to private landowner); *Sublett v. United States,* 688 S.W.2d 328, 329 (Ky.1985) (holding Kentucky statutes did not violate state constitutional open-courts provision when applied to public landowner); *Stokka,* 373 N.W.2d at 915 (holding North Dakota statutes did not violate equal protection when applied to private landowner); *Moss v. Dep't of Natural Resources,* 62 Ohio St.2d 138, 404 N.E.2d 742, 745 (1980) (holding Ohio statutes did not violate equal protection when applied to public landowner); *Riksem v. City of Seattle,* 47 Wash.App. 506, 736 P.2d 275, 278–79 (1987) (holding Washington statutes did not violate equal protection when applied to public landowner); *Johansen v. Reinemann,* 120 Wis.2d 100, 352 N.W.2d 677, 679 (Ct.App.1984) (holding Wisconsin statutes did not violate equal protection when applied to public landowner). Although the above cited courts employed a rational basis standard of review in these equal protection challenges, rather than the intermediate, close correspondence standard of review, we believe the entire lack of contrary authority under any standard of review demonstrates the overall judicial acceptance of recreational use immunity statutes.

[¶ 13] Olson and Howard rely on statements made by a majority of this Court in *Hovland,* 1997 ND 95, 563 N.W.2d 384. In *Hovland* at ¶¶ 12, 13, 16, the majority declined to interpret the recreational use immunity statutes as applying to political subdivisions because it would raise "a serious equal protection question":

> If public lands were granted immunity for all recreational activities, Caroline could not recover for her injuries because she was using the bike path for a recreational use, but had she been using the bike path for a non-recreational use she would be allowed to recover. This interpretation allows the government to treat two classes of persons injured on public lands differently: it forbids recovery for personal injuries incurred during recreational activities, but permits recovery for personal injuries incurred during non-recreational activities. The recreational use immunity statute was created to encourage private landowners to permit public access to private lands. In the context of public access to private lands, the disparate treatment of recreational users seems to make sense. In the context of public access to public lands, the disparate treatment is much harder to understand.
>
> . . . .
>
> The legislative history does not disclose any reason why a recreational user of public lands could not recover for personal injuries when a non-recreational user could. Without a close correspondence with legislative goals supporting this classification, the statute might well fail an equal protection challenge under an intermediate standard of review.

(Footnote omitted). These statements are dicta, and we are not compelled by stare decisis to follow them. *Id.* at ¶ 8. We do not follow the path outlined in the *Hovland* dicta here because, under the circumstances of this case, we believe there is a

close correspondence between the statutory classification and the legislative goals.

[¶ 14] The recreational use immunity statutes create two classes of persons and treat them differently: nonpaying recreational users of another's land and all other persons using the land of another. The class distinction is based upon the location and nature of the injured person's conduct when the injury occurs. *See Harlan*, 635 F.Supp. at 724. Although not clearly articulated in the legislative history of the 1995 amendments, the primary purpose of the recreational use immunity statutes has not changed since their original enactment in 1965. The statutes are intended to provide limited tort immunity to landowners and to encourage them to provide access to their land without charge for public recreational use. Such encouragement was necessitated by the threat of tort liability which had led some landowners throughout the country to bar people from using their land. *See Simpson*, 652 F.2d at 833. We agree with the Idaho Supreme Court that the "encouragement of recreation enhances the physical well-being of ... people, has a positive effect on [the] economy," and is an important legislative goal. *Johnson*, 684 P.2d at 272. It is logical for the Legislature to conclude that a limitation on a landowner's liability exposure to nonpaying recreational users has an influence on the landowner's decision not to exclude recreational users from the land. *Id.* Limited tort immunity is the quid pro quo for the noncommercial opening of property to the public for recreational use. *Hendrickson v. Georgia Power Co.*, 80 F.Supp.2d 1374, 1378 (M.D.Ga. 2000). The recreational use immunity statutes therefore protect landowners when others use the property without charge for their personal enjoyment, *see Harlan*, at 724, but continue to hold landowners responsible for their willful and malicious conduct.

[¶ 15] Olson and Howard argue the logic for providing a private landowner with limited liability in exchange for opening land for public use without charge for recreational purposes does not have the same justification when applied to public landowners because, "[i]n theory, public land is already open to the public." This argument is unpersuasive. The distinction urged by Olson and Howard has been rejected by several courts. In *Gard v. United States*, 594 F.2d 1230, 1233 (9th Cir. 1979), the court addressed the appellant's argument that the Nevada sightseer statute did not apply to the government:

> [Gard] argues first that the purpose of [the statute] is to encourage landowners to open up their land to recreational use and that such a rationale does not apply to the Government. We disagree. Gard does not suggest that the Government could not completely close various federal lands to public use if it felt its potential tort liability was too great. Thus the principle of encouraging landowners to open their land by limiting potential tort liability applies with equal force to the Government as to other landowners.

*See also Jones v. United States*, 693 F.2d 1299, 1302 (9th Cir.1982); *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); *McCarver v. Manson Park and Recreation Dist.*, 92 Wash.2d 370, 597 P.2d 1362, 1366 (1979). Olson and Howard do not argue the District lacks the power to close or severely limit the use of its land to the public. The District and other governmental entities have the power to control the use of public lands. *See, e.g.*, N.D.C.C. §§ 11–28–05; 11–28–16; 55–05–22; 55–08–01.3.

[¶ 16] Olson and Howard raise hypothetical examples of situations in which the recreational use immunity stat-

utes, if broadly interpreted, might be unfairly applied. However, as in *Stokka*, 373 N.W.2d at 915, we do not find helpful "[r]eference to abstract, factually dissimilar hypotheses" because Olson and Howard "may assert only matters relating to [their] constitutional rights." Olson and Howard concede they were engaged in a voluntary recreational use of the hill free of charge when they were injured. Winter sledding is a recreational use in the clearest sense of the term. *See, e.g., Kelly v. Ladywood Apartments*, 622 N.E.2d 1044, 1048 (Ind.Ct.App.1993); *Boaldin v. University of Kansas*, 242 Kan. 288, 747 P.2d 811, 813 (1987); *Marrek v. Cleveland Metroparks Bd. of Comm'rs*, 9 Ohio St.3d 194, 459 N.E.2d 873, 877 (1984). · Like skiing, winter sledding has many inherent risks and dangers. *See Bouchard*, 555 N.W.2d at 85; *Jordon by Jordon v. K–Mart Corp.*, 417 Pa.Super. 186, 611 A.2d 1328, 1331–32 (1992). "Voluntary participants in sporting and recreational activities are presumed to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of the participation." *Dickey*, 4 P.3d at 973 (citations and internal quotation marks omitted). There may be situations in which application of the recreational use immunity statutes would be unconstitutional, but this case does not present such a situation.

[¶ 17] Under the undisputed facts of this case, we conclude the recreational use immunity statutes advance the important legislative goal of opening property to the public for recreational use in a manner that closely corresponds to the achievement of that goal. We hold N.D.C.C. ch. 53–08, as applied here, does not violate N.D. Const. art. I, § 21.

### III

[¶ 18] Olson and Howard do not argue the District's actions in this case were "[w]illful and malicious" under N.D.C.C. § 53–08–05(1). Consequently, we affirm the summary judgment.

[¶ 19] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.

NEUMANN, Justice, concurring.

[¶ 20] I have joined the majority in this case despite the dicta I authored in *Hovland v. City of Grand Forks*, 1997 ND 95, 563 N.W.2d 384. On the facts of this case, I see a close correspondence between the statutory classification in N.D.C.C. ch. 15–03 and the legislative goal of fostering the availability of free recreational opportunities. As the majority opinion points out, these appellants were recreational users in the clearest sense of the term, utilizing a free recreational facility for a traditional recreational purpose.

[¶ 21] The legislature has declared a general policy of protecting citizens from injury caused by the negligent omissions of others. However, the legislature also realized this policy could limit the availability of free recreational opportunities for those same citizens. The legislature decided our people would best be served by increasing free recreational opportunities, even if the safe use of those free opportunities would have to depend primarily upon the caution and watchfulness of those who use them. To my mind that is a clear close correspondence between classification and legislative goal.

[¶ 22] What is more of a mystery and concern to me is the expansively broad language of the act, encompassing not just recreational facilities but every publicly owned building, road and "ways" in the State of North Dakota. The effect of that broad language is to treat drivers and pedestrians on our public streets and sidewalks differently, depending on their pur-

pose in being there. A citizen who chooses to walk to work because it is a beautiful spring day arguably is owed no duty of care by the city to keep the sidewalk safe, while the person beside him, walking to work because he has no car, is owed such a duty. A close correspondence between that classification and the legislative goal is much harder to see. Further concern is raised by the inclusion of "education" in the definition of "recreational purposes." The statute appears to relieve all school districts of any duty to keep their buildings and other premises safe for use by students who have not paid a fee for the educational use of those premises. At the same time, the statute holds the school districts to a higher standard of care for the student who pays a fee to use those same premises for an extracurricular activity. Again, the correspondence between classification and legislative goal is elusive.

[¶ 23] Fortunately, as the majority opinion points out, none of those facts are presented in this case. I have therefore joined the majority.

[¶ 24] MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

MARING, Justice, specially concurring.

[¶ 25] Although I concur in the result, I write separately because I disagree with the majority opinion's conclusion that the primary purpose of the recreational use immunity statutes has not changed since their original enactment in 1965. The majority does acknowledge that when the recreational use statutes were first enacted the purpose was to encourage private landowners to open their lands for recreational use by the public by removing the potential for liability. 1965 N.D. Sess. Laws ch. 337. However, when the Legislature changed the definition of land in N.D.C.C. § 53–08–01 to include public land as well

as private land, I am of the opinion the focus of the statutes changed. The majority of the public lands which the public would be using for recreational purposes are already lands open for recreational use to the public. Some of these public lands are open to the public for a fee and some for free. The focus is no longer on "opening" lands for recreational purposes, but rather on limiting liability of a landowner to a person who enters the owner's property to engage in a recreational activity. Perhaps it is more accurate to state that the goal of the legislation, as it applies to public lands is to prevent the "closing" of public lands which have been used primarily for recreational purposes in the aftermath of the abolishment of sovereign immunity. *Bulman v. Hulstrand Const. Co., Inc.*, 521 N.W.2d 632 (N.D.1994). In my opinion, there is a close correspondence between the classification and the Legislature's goal of continuing to make public lands available for free recreational use.

[¶ 26] I also disagree with the majority's conclusions that "[l]ike skiing, winter sledding has many inherent risks and dangers" and that "[v]oluntary participants in sporting and recreational activities are presumed to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of the participation." In this case, there was no issue whether Olson was engaged in a recreational activity, and I consider these statements nothing but dicta.

[¶ 27] MARY MUEHLEN MARING.